**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **J&S WELDING INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 1:22-cv-01122** |
| **v.** | ) | |
| | ) | **JURY DEMAND** |
| **LIBERTY MUTUAL INSURANCE** | ) | |
| **COMPANY and WEST AMERICAN** | ) | *(Removed from the Gibson County Circuit* |
| **INSURANCE COMPANY,** | ) | *Court, Case No. H4227)* |
| | ) | |
| **Defendants.** | ) | |

<u>**DEFENDANTS LIBERTY MUTUAL INSURANCE COMPANY AND WEST**</u>
<u>**AMERICAN INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**THEIR MOTION FOR SUMMARY JUDGMENT**</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants West American

Insurance Company ("West American") and improperly named Liberty Mutual Insurance

Company[1] ("Liberty" and collectively with West American "Defendants") submit their

Memorandum of Law in support of their Motion for Summary Judgment seeking dismissal of

Plaintiff's claims for breach of contract and state as follows:

I.      <u>**INTRODUCTION**</u>

This lawsuit involves alleged hail and wind damage allegedly occurring to two (2)

commercial buildings located on real property at 2579 North 9th Avenue, Humboldt, Tennessee

38343, on or about May 4, 2020 (the "Alleged Storm Event").[2]  Prior to the Alleged Storm Event,

---

[1] As noted in the Notice of Removal and Answer, Defendant Liberty Mutual Insurance Company did not underwrite the insurance policy at issue in this lawsuit and is not a proper defendant to this lawsuit. [ECF No. 1 PageID 3; ECF No. 08-0 at ¶¶ 2-3, 7.]  As Defendant Liberty Mutual Insurance Company is not a property defendant to this lawsuit, Defendants respectfully request summary judgment in favor of both West American and Liberty Mutual Insurance Company and dismissal of Plaintiff's claims against both Defendants.  Regardless, Defendant Liberty Mutual Insurance Company should be dismissed as it is not a party to the contract at issue: the Policy.

[2] The Complaint alleges the storm event occurred on or about August 21, 2020. [ECF No. 1-1.] However, Plaintiff's corporate representative, Beau Eddings, later testified this date is incorrect and that the Alleged Storm Event occurred on May 4, 2020. (Beau Eddings Deposition, March 24, 2023 at 24:22-26:1, attached to Motion as **Exhibit 2**.) For purposes of this Motion, the date of loss will be referenced hereafter as May 4, 2020.

on November 4, 2019, West American issued a Commercial General Liability insurance policy to Plaintiff bearing Policy No. BKW (20) 56 41 58 45 with a policy period of November 4, 2019 through November 4, 2020 (the "Policy").

Over a year after the Alleged Storm Event, on or about June 25, 2021, Plaintiff reported alleged hail damage had occurred to the Property as a result of the Alleged Storm Event ("Alleged Hail Damage"). Following the late-reported loss, West American timely investigated Plaintiff's claims and paid $48,584.95 to Plaintiff.  Such payment covered the actual cash value for the damage suffered to the exterior walls of Plaintiff's two (2) commercial buildings, but did not provide coverage for the cosmetic losses to the roofs of the two buildings based on a "Cosmetic Loss Exclusion Endorsement" found within the Policy.

This Court entered a Scheduling Order on September 9, 2022 requiring, among other deadlines, that Plaintiff disclose its expert witness(es) by May 8, 2023. [D.E. 16.]   Plaintiff has produced no expert proof whatsoever related to the alleged loss at issue, even after counsel for Defendants reached out to Plaintiff's counsel about this missed deadline. Conversely, Defendants' timely provided their expert disclosures supporting West American's position that the loss to the roofs at issue was cosmetic. [ECF No. 24-2; Defendants' Expert Witness Disclosures, attached to Motion as **Exhibit 4**.]   As a result, Plaintiff cannot dispute Defendants' position that (a) the "Cosmetic Loss Exclusion Endorsement" applies to the claimed loss to the roofs at issue and (b) that West American has fully complied with its obligations to Plaintiff under the Policy.

For these reasons, Defendants respectfully request summary dismissal of Plaintiff's claims

## II.   UNDISPUTED MATERIAL FACTS

Plaintiff owns the real property located at 2579 North 9th Avenue, Humboldt, Tennessee 38343 on which two (2) commercial shop buildings – a large shop building which faces east toward

North 9th Avenue, and a smaller building located west of the main building are located (the "Property"). (Declaration of Teresa Herman, June 2, 2023 ("Herman Dec."), at ¶ 4, attached to Motion as **Exhibit 1**.)  The roofs of the two (2) commercial shop buildings are covered by metal panels; the roof atop the large shop building is the same metal roof that was installed in 1982 and 1983.  (Beau Eddings' Deposition, March 24, 2023 at 41:22-24; 69:17-20; 73:2-18, attached to Motion as **Exhibit 2**; Beau Eddings' Deposition, April 21, 2023 at 16:12; 17:4-10; 92:20-93:7, attached to Motion as **Exhibit 3**; **Ex. 1** at ¶¶ 15, 18; Ex. E p. 1; Ex. G p. 2.)

On June 25, 2021, nearly a year after the Alleged Storm Event, Plaintiff's public adjuster, William Griffin ("Mr. Griffin"), filed a claim with West American related to alleged hail damage that had occurred to the roofs of the main shop building and a smaller building on the Property during the summer of 2020 ("Alleged Hail Damage"). (*Id.* at ¶ 9.) On June 29, 2021, West American received a Letter of Representation from Mr. Griffin advising that he was the public adjuster for Plaintiff. (*Id.* at ¶ 10, Ex. B.)

**The Policy**

On November 4, 2019, West American issued a Commercial General Liability insurance policy to Plaintiff bearing Policy No. BKW (20) 56 41 58 45 with a policy period of November 4, 2019 through November 4, 2020 providing certain coverages for the Property (the "Policy") (D.E. 8-1 at PageID 31.] The Policy contains the following relevant language:

**Commercial Property Declaration Schedule -Revised**

**SUMMARY OF PROPERTY COVERAGES - BY LOCATION**

| Building Coverage | |
|---|---|
| | **Occupancy:** Welding or Cutting - Welding Shops **Description** |
| | Limit of Insurance – Replacement Cost         **$233,772** |

* * *

\* \* \*

**Covered Causes of Loss**

Special Form – Including Theft

| | |
|---|---|
| Deductible – All Covered Causes of Loss Unless Otherwise Stated | $1,000 |

| | |
|---|---|
| Roof Surfacing Cosmetic Loss Exclusion | See Endorsement CP8836 |

(D.E. 8-1 at PageID 36; **Ex. 1** at ¶ 7.)

The Policy also states the following:

**ROOF SURFACING COSMETIC LOSS EXCLUSION**

\* \* \*

<u>**We will not pay for "cosmetic loss or damage" to any "roof surface" caused by wind and/or hail.**</u> For the purpose of this endorsement, "cosmetic loss or damage" means marring, pitting or other superficial damage caused by wind/and or hail that alters the physical appearance, but does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the "cosmetic loss or damage" occurred.

"Roof surface" refers to the shingles, tiles, flashing, cladding, metal or synthetic sheeting or any other materials used for the roof, including all materials applied to or under the roof for protection or insulation from moisture or the elements.

(D.E. 8-1 at PageID 193, CP 88 36 10 13, **Ex. 1** at ¶ 8. Ex. A.) (emphasis added) ("Roof Cosmetic Loss Exclusion").

Further, the Policy provides the following:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

\* \* \*

**G.     Optional Coverages**
If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

\* \* \*

**3.     Replacement Cost**
    **a.**     Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form. **…**
    **d.**     We will not pay on a replacement cost basis for any loss or damage:

>**(1)** Until the lost or damaged property is actually repaired or replaced; and
>
>**(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

[D.E. 8-1 at PageID 170.] Liberty did not issue or underwrite the Policy. [ECF No. 1 PageID 3; ECF No. 08-0 at ¶¶ 2-3, 7.]

## Pre-Suit Site Inspections

Upon Mr. Griffin's report of the Alleged Hail Damage, West American retained Larry Ransom from Sedgwick Claims Management Services to conduct an initial inspection of the Property on July 21, 2021. (**Ex. 1** at ¶ 11.) Mr. Ransom provided an estimate listing an actual cash value for the covered portion of Plaintiff's claim of $49,584.95, and a total replacement cost value of $57,189.88. (*Id.*) West American timely issued payments to Plaintiff in the amount of $48,584.95 (after application of the $1,000 deductible), including, but not limited to, payments for repairs in accordance with the Policy. (**Ex. 1** at ¶ 12, Ex. D.) Plaintiff accepted and cashed the check issued by West American in the amount of $48,584.95. (**Ex. 1** at ¶ 13; **Ex. 2** at 75:15-16, **Ex. 3** at 81:22-82:7.) However, Plaintiff objected to West American's initial coverage determination and averred that the $48,584.95 payment issued for repairs was insufficient, claiming that the damages to the roofs was not merely cosmetic. (**Ex. 1** at ¶ 13; **Ex. 3** at 82:8-18, Ex. 12.) Accordingly, in September of 2021, West American retained an engineer from Donan Engineering Co., Inc., Michael Williamson ("Mr. Williamson"), to further inspect the Alleged Hail Damage. (**Ex. 1** at ¶ 14.)

Mr. Williamson inspected the Property on October 1, 2021 and prepared a Report of Findings dated October 6, 2021. (**Ex. 1** at ¶ 15, Ex. E.) In his Report of Findings, Mr. Williamson found that minor hail damage occurred to both buildings on the Property and most likely occurred during recorded storm events in May 2020. (*Id.* at ¶ 16, Ex. E.) However, Mr. Williamson

concluded that "the dents [on the roof covering] are due to hail strikes, but the damage is cosmetic in nature" as "the functionality of the roof[s] [have] not been affected by the hail." (*Id*.) Mr. Williamson also determined that "hail impacts would not result in the 3 foot to 5-foot long lifting of the overlap seams as is present on the main building" and that "the lifted panels are the result of deferred maintenance" and with respect to the main building, that "the leaks are due to missing screws and degraded sealant on the roof." (*Id.*)

**Liberty's Partial Denial Letter and Lawsuit**

Based on the findings in Mr. Williamson's Report of Findings, on October 7, 2021, West American emailed Mr. Griffin, as Plaintiff's public adjuster, advising it had determined the Alleged Hail Damage "are cosmetic in nature and has not affected the function or longevity of the roof" and that "[t]herefore because of the Roof Surfacing Cosmetic Loss Exclusion on the policy our original estimate stands." (**Ex. 1** at ¶ 17, Ex. F.)

On April 25, 2022, Plaintiff filed suit against Defendants in the Circuit Court of Gibson County, Tennessee asserting only one claim: breach of contract. [ECF No. 01-1.] Plaintiff specifically alleged that "[o]n or about August 21, 2020[3] … "[t]he Insured Premises were seriously damaged by high winds and hailstorm compromising the Plaintiff's roofing system, and siding …" and Defendants "…severely undervalued the claim". [ECF No. 01-1 ¶¶ 11, 22.] Plaintiff also asserted that Defendants "refuse to pay the true amount of the loss, which is a material breach of the" Policy and requested compensatory damages in an amount up to $250,000. [*Id.* at ¶ 26, Prayer For Relief at ¶ 1.] Finally, Plaintiff alleged "William Griffin prepared an estimate as a public adjuster" regarding the Alleged Hail Damage.  (*Id.* at ¶ 13.)

---

[3] As in footnote 1 above, Mr. Eddings testified the August 21, 2020 date is incorrect. The correct date for Alleged Storm Event is May 4, 2020.

Defendants removed this case to this Court on June 9, 2022. [ECF No. 01-0.]  Defendants denied Plaintiff's claims and again gave notice to Plaintiff of its position that the alleged roof damage was excluded by the Roof Cosmetic Loss Exclusion.  [*See generally* ECF No. 8, including Aff. Def. ¶ 4.]  Thereafter, on September 9, 2022, this Court entered a Scheduling Order providing, among other deadlines, that Plaintiff had until May 8, 2023 to provide its expert witness disclosures. [ECF No. 16] (**Ex. 1** at ¶ 21.) As of the filing of this Motion, Plaintiff not disclose any expert witnesses and has not provided any reports from its expert witnesses. (**Ex. 1** at ¶ 22.)

**Post-Suit Site Inspection**

On August 9, 2022, counsel for Defendants and Brian Moon attended a site inspection of the Property.  (**Ex. 1** at ¶ 18.)  West American retained a trial expert, Brian Moon, a structural engineer at EnVista Forensics[4] ("EnVista"), to re-evaluate whether any wind or hail-related roof damage occurred to the Property related to the Alleged Storm Event (or otherwise). (*Id.*)

Following his site inspection on August 9, 2022, Mr. Moon issued a written Report of Findings dated January 6, 2023. (*Id.*, Ex. G.) Mr. Moon personally inspected the exterior buildings, wall siding, gutters, downspouts, and siding for hail damage. (*Id.*) Mr. Moon found that "indentions in the metal components without associated surface coating damage or ruptured metal would constitute damage that would **not** affect the functionality or longevity of the materials." Mr. Moon further found that his "observations indicated a presence of roughly circular indentions without surface coating damage or ruptured metal…". (**Ex. 1** at ¶ 19, Ex. G at p. 5.)  Mr. Moon observed a sealant that had been put on the portion of the main commercial building's roof which was owned by Plaintiff. (**Ex. 1**, Ex. G p. 4.) However, during Mr. Moon's inspection, he observed the unsealed portion of the roof directly adjacent to the sealed portion. (**Ex. 1**, Ex. G p. 4-5.)

---

[4] Mr. Moon has since left EnVista Forensics and is currently employed at the Nashville office of Young and Associates, an international consulting firm.

Mr. Moon determined the minor hail damage observed at the Property "will not affect the functionality or longevity of the roof covering and wall siding." (**Ex. 1** at ¶ 19, Ex. G at p. 2) Notably, Plaintiff's corporate representative, Beau Eddings ("Mr. Eddings"), testified that the only repairs he made to the Property with the $48,584.95 payment from West American was to apply the roof sealant and repair certain electrical issues to the main building. (**Ex. 2** at 35:13-16**;** *Id.* at 75:16-76:7; **Ex. 3** at 31:7-33:11.)

West American also retained Tim Kelley from West Tennessee Restoration to conduct a site inspection on August 9, 2022 and evaluate the Property for estimated costs of repairs associated with the Alleged Hail Damage. [**Ex. 4**, Ex. 5.] Like Mr. Williamson and Mr. Moon, Mr. Kelley determined that any hail damage to the roof was "so minor in nature that it does not appear in photos nor would it effect the functionality of the roof." (*Id.*) Following his inspection, Mr. Kelley prepared an estimate regarding the total replacement cost value estimate of $55,311.71, which is approximately $1,878.17 less than the initial replacement cost value estimate prepared by Liberty's representatives prior to the lawsuit being filed in the amount of $57,189.88. (*Id.*)

In light of uncontroverted findings of its experts, West American contends any roof damage observed at the Property related to the Alleged Storm Event constitutes "cosmetic loss or damage" and is specifically excluded by the Policy. (**Ex. 1** at ¶ 20.)

**30(b)(6) Depositions of Plaintiff's Corporate Representative**

On March 24, 2023 and April 21, 2023, Defendants' counsel deposed Plaintiff's corporate representative, Beau Eddings. During these depositions, Mr. Eddings testified that at the time of the Alleged Storm Event he "was at home…it was right after quitting time, time to go home. We all kind of drove into it on our way home" and that no one was present at the Property during the Alleged Storm Event. (**Ex. 2** at 26:13-27:2.) Mr. Eddings also testified that he has not had anyone

replace the middle panels or insulation on the sides of either building at the Property since he purchased the Property in December 2013. (*Id.* at 35:8-16.) Additionally, Mr. Eddings testified that after the Alleged Storm Event[5], he paid Shrocks Roofing $15,200 to apply sealant on the portion of the roof Plaintiff owned of the large shop building. (*Id.* at 38:7-12; **Ex. 3** at 42:20-24.) Mr. Eddings testified that he has "never walked on the roof" and in response to Defendants' counsel inquiring what knowledge J&S has about the cost to repair the Alleged Hail Damage, Mr. Eddings testified "I'm not a contractor or a roofer, I really don't know." (**Ex. 2** at 41:22-23; **Ex. 3** at 19:24-25.) Mr. Eddings later testified "…I'm not a roofer. Like I said, I'm not a contractor. I don't build buildings" and "I do not know if that's what it would take or not, I really don't. It's a big building, industrial steel. There's a lot of to go by, you know, rules to get it done. I can't say that that number will cover it or it won't cover it." (**Ex. 3** at 27:4-9; 52:2-4.)

Mr. Eddings also testified that other than William Griffin, no one else has given Plaintiff estimates for what it would cost to replace the roofs and when asked what support Plaintiff has to substantiate its allegation in Paragraphs 16-20 of the Complaint that Defendants severely undervalued Plaintiff's claim, Mr. Eddings testified "I didn't set the process that are on these quotes; you know what I mean? So, how do I know if it's undervalued or overvalued?" (**Ex. 2** at 70:10-12; 76:8-20.) Mr. Eddings also testified that he would pay Mr. Griffin ten percent (10%) of any recovery obtained from this lawsuit and that he has already paid Mr. Griffin ten percent (10%) of the $48,584.95 payment West American issued to Plaintiff for Mr. Griffin's services as Plaintiff's public adjuster.[6] (**Ex. 3** at 86:9-13; 87:21-88:4.)

---

[5] Plaintiff produced an invoice from Shrocks Roofing in response to West American's written discovery requests which provides that Shrocks installed the sealant on the roof of the main building at the Property on May 27, 2022.

[6] To the extent Plaintiff intends to belatedly offer expert testimony from Mr. Griffin, Mr. Griffin should be barred from giving any expert testimony in this case because he has a direct financial interest in the outcome of this case as Plaintiff's public adjuster. Courts have consistently excluded expert testimony that is not based on independent knowledge or expertise, holding such testimony is biased and unreliable because "'[o]nce the expert obtains a direct financial interest in the outcome of the litigation (whether by his or her status as a party, by contingency fee agreement, or otherwise), any semblance of independence or promise of intellectual rigor that normally adheres to an expert witness is fatally wounded.'"

Prior to taking Plaintiff's depositions, West American propounded its First Set of Interrogatories and Requests for Production on Plaintiff on or about September 8, 2022. [ECF No. 33-1.] In its responses, Plaintiff produced a document entitled "Tool List 1" and "Tool List 2", which listed tools and equipment that Plaintiff claimed were damaged as a result of the alleged storm event and included a total repair amount of $35,200.00. [ECF 33-2.] Plaintiff has now articulated a claim for loss of tools within the large commercial building, but Plaintiff has identified no expert to opine that the claimed tool damage was caused by the Alleged Storm Event. (**Ex. 1** at ¶ 22.)

As set forth above, Plaintiff has presented no admissible proof that (1) rebuts Defendants' expert proof that the Alleged Hail Damage is cosmetic, and the "functionality of the roof[s] [have] not been affected by the hail." (*Id.* at ¶ 15, Ex. E, p. 5), or (2) West American's estimate and payment for the covered damage to the Property was insufficient to compensate Plaintiff for the full value of the covered losses. Accordingly, Plaintiff's breach of contract claim fails as a matter of law and should be dismissed.

## III.   SUMMARY JUDGMENT STANDARD

A party moving for summary judgment must prove that the motion satisfies the requirements of Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the party seeking summary judgment makes a properly supported

---

*Wheatridge Office, LLC v. Auto-Owners Insurance Company*, 2022 WL 36137, at *14 (D. Colo. Jan. 4, 2022) (internal citations omitted). Here, Mr. Griffin was involved as Plaintiff's public adjuster for a percentage fee and has received a percentage of the payment already issued to Plaintiff by West American. (**Ex. 3** at 86:9-13; 87:21-88:4.) Thus, Mr. Griffin should not be permitted to give any expert testimony in this case, because his opinion is influenced by his firsthand involvement with Plaintiff's claim and potential pecuniary gain.  In addition to this argument, Plaintiff did <u>not</u> give timely notice to Defendants or the Court that it intended to have Mr. Griffin provide any expert testimony.

motion under Rule 56, the non-moving party may not rest upon the allegations or denials of its pleading, but rather must set forth specific facts at the summary judgment stage showing there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009).  The non-moving party may not rely on legal conclusions or the allegations of denials in its pleadings to carry its burden. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

When determining whether a genuine dispute of material fact exists in a particular case, the court must determine (1) whether the facts at issue are material according to the pertinent substantive law and (2) whether the dispute over those facts is genuine, or such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247-48. Not every factual dispute requires a denial of a motion for summary judgment. *Id.*  To warrant denial of a motion for summary judgment, the factual dispute must be material in that it must be a fact "that might affect the outcome of the suit under the governing [substantive] law." *Id.*

Courts are required to draw all reasonable inferences from the underlying facts in the light most favorable to the non-moving party. *Matsushita*, 475 U.S. at 587. "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. Summary judgment may be granted if the evidence is "merely colorable" or "not significantly probative." *Id.*  In other words, the nonmoving party must "put up or shut up" once the moving party has satisfied its burden. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989); *Blackshaw v. MSC Indus. Direct Co., Inc.*, No. 2:12-cv-00167, 2015 WL 3949261, at *2 (E.D. Tenn. June 29, 2015). As addressed in detail below,

Defendants have provided unrefuted expert proof that (a) the Alleged Hail Damage to the roofs was cosmetic and (b) the actual cash value payment made to Plaintiff prior to the filing of the lawsuit is sufficient payment for the covered portion of the loss at issue.

## IV.   LAW AND ANALYSIS

### A.   Burden Shifting Paradigm

It is well-settled that when an insurance coverage dispute exists, "[the insured] has the burden to demonstrate that [the insured's] claims fall within the Policies' coverage" and the burden then shifts to the insurer to prove that an exclusion in the insurance policy applies. *Liberty Corp. Capital Ltd. v. Sec. Safe Outlet*, 577 F. App'x 399, 404 (6th Cir. 2014). Courts have consistently recognized that "[o]nce an insurer carries its burden of identifying an applicable exclusion, the burden shifts to the insured to demonstrate that the claim fits within an exception to the exclusion." *Interstate Packaging Co. v. Century Indem. Co.*, No. 3:11-cv-00589, 2012 U.S. Dist. LEXIS 35416, at *10 (M.D. Tenn. Mar. 13, 2012) (internal citations omitted).[7]

For purposes of this motion only, West American admits the Alleged Storm Event occurred during the Policy's effective period and that hail damage to the roofs has been observed that may be related to the Alleged Storm Event.  However, Defendants contend that their uncontroverted expert proof [**Ex. 1**, Exs. E & G; *See generally* **Ex. 4**] proves the Cosmetic Loss Exclusion bars Plaintiff's claim related to the Alleged Hail Damage.

---

[7] *See also Berbaum v. AMCO Ins. Co.*, No. 1:21-cv-01004-STA-jay, 2022 U.S. Dist. LEXIS 37497, at *13-14 (W.D. Tenn. Mar. 3, 2022) (internal citations omitted) ("'[O]ne of the most basic principles of insurance law . . . is that the insured has the burden of demonstrating that a covered loss has occurred.' 'Two corollaries to this principle are (1) that an insurance company has the burden of proving that an exclusion in its policy applies to a claim, and (2) that once an insurance company demonstrates that an exclusion applies, the burden shifts to the insured to demonstrate that its claim fits within an exception to the exclusion.'"); *Hartford Cas. Ins. Co. v. Ewan*, 536 F. App'x 553, 557 (6th Cir. 2013) ("If the insurer shows an exclusion applies, the burden shifts back to the insured to show that there is an exception to the exclusion.").

**B.**      **Admission and Necessity of Expert Proof**

Pursuant to Federal Rule of Evidence 702, expert testimony should be admitted only where (a) the witness is qualified as an expert "by knowledge, skill, experience, training, or education" on the topic of the proffered testimony, and (b) the testimony is relevant, reliable, and will help the trier of fact.  *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 478 (6th Cir. 2008); *Coffey v. Cowley Mfg., Inc.*, 187 F. Supp. 2d 958, 970 (M.D. Tenn. 2002) ("The admissibility of expert testimony turns on whether the expert is qualified and whether the testimony meets the requirements of Rule 702 of the Federal Rules of Evidence.").  Further, "under Rule 701 of the Federal Rules of Evidence, a lay witness can provide opinion testimony only if it is *'not* based on scientific, technical, or other specialized knowledge within the scope of Rule 702'" and "[t]he purpose of this provision is to prevent parties from presenting expert opinion evidence in the guise of lay opinion testimony and thereby evade the disclosure requirements of Rule 26(a)(2) and the gatekeeping role of the trial court." *HM Hotel Properties v. Peerless Indem. Ins. Co.*, CV12-0548 PHX-DGC, 2013 WL 4507602, at *3 (D. Ariz. Aug. 23, 2013), *aff'd*, 624 Fed. Appx. 520 (9th Cir. 2015) (unpublished).

        *Relevant Tennessee Federal Holdings*

Tennessee courts have dismissed lawsuits brought by insureds who claimed the insurer improperly denied (or provided too little) coverage under an applicable exclusion, but the insured failed to present any expert to support the insured's position and/or rebut the insurer's expert proof.

In 2017, the Eastern District of Tennessee confirmed that "[w]hile a plaintiff can testify as to the value of an item of personal property, expert testimony is required to prove whether or not property can be repaired, and if so, the costs of such repairs." *Speakman v. Liberty Insurance Corp.*, No. 4:16-CV-41, 2017 WL 3671364, at *4 (E.D. Tenn. July 5, 2017) (citing *Southside*

*Leasing Co. v. Matlock*, 1989 WL 128506 at *1 (Tenn. Ct. App. Oct. 27, 1989) ('The court then noted that the owner of the property may testify as to value, but the testimony proposed here was really expert testimony on cost of repairs and sustained the objection.'").[8]

Even more analogous is another Eastern District of Tennessee case from 2018, *Clark v. Safeco Ins. Co.*, No. 3:17-cv-00033, 2018 U.S. Dist. LEXIS 210781, at *6 (E.D. Tenn. 2018), where the District Court considered whether to grant summary judgment where the plaintiff alleged his insured automobile was damaged by a covered mode of loss, specifically hydrolock, while the insurer denied coverage under an exclusion. In *Clark*, unlike here, the plaintiff timely identified an expert witness, but such expert was earlier disqualified following a *Daubert* hearing. The *Clark* court held "[b]ecause the court has excluded [Plaintiff's expert witness] from giving testimony at trial, Clark does not have admissible proof as to the cause of the engine's failure." *Id.*

The *Clark* court also held "Safeco, on the other hand, has proffered three experts with experience and technical expertise in investigating damage to engines. Safeco has the only proof on the issue of causation as to the engine failure" and "[e]ach of Safeco's experts agree the cause of the engine damage was a mechanical failure due to a detonation event, which occurs during the ordinary or normal operation of the engine." *Id.* The *Clark* court noted although the plaintiff insisted that he would be able to testify "as to the facts and circumstances leading to the cause of the engine failure" based on his own experience and submitted an affidavit attesting to his opinion

---

[8] *See also Providence Piers, LLC v. SMM New England, Inc.*, 2015 WL 9699936 at *8 (D.R.I. Oct. 1, 2015) ('Otherwise, focusing on the definition of expert testimony in Fed. R. Evid. 702 . . . courts overwhelmingly hold that estimating the cost of a complex repair requires the forecasting of the amount, type and costs of materials and labor, which are not common knowledge or familiar in everyday life; accordingly, predicting future repair costs requires specialized knowledge and is expert, not lay, testimony.')"); *Wickman v. State Farm Fire & Cas. Co.*, 616 F. Supp. 2d 909, 920-21 (E.D. Wis. 2009) (finding that opinions as to the feasibility and costs of repairs must be "given by qualified witnesses" and the "[insureds] … clearly lack the education, training or experience that would be needed to offer an expert opinion under Fed. R. Evid. 702 on the question of what it would have cost to repair the home", ultimately granting summary judgment to the insurer based on plaintiffs lack of expert proof and noting that plaintiffs bear the burden of proving breach and "'[t]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'… Thus, the question before me is not whether State Farm can prove that what it has already paid is sufficient, but whether the Wickmans have evidence to show that it is not.")

of the cause of the engine failure, such affidavit was inadmissible as lay opinion testimony under

Federal Rule of Evidence 701.[9] *Id.*  The *Clark* court specifically held the following:

> It is clear to the court that [Plaintiff] lacks the experience, training, qualifications, and methodology necessary to opine as to the cause of the engine failure. Establishing the cause of the engine's damage, whether it be mechanical failure or hydrolock, is beyond the expertise of a lay observer and requires expert testimony given the necessary educational or experiential background to diagnose such a problem. The Court finds that [Plaintiff's] proffered testimony is not admissible because he is not qualified as an expert in this case and his opinion as to the cause of the engine failure is inadmissible lay opinion testimony.

*Id.* at *9-10. The *Clark* court held that "[w]ithout the testimony of [Plaintiff's expert witness] as

an expert, there is no expert testimony to support [Plaintiff's] allegation that the engine damage

was the result of a coverable incident under his policy of insurance" and "[b]ecause [Plaintiff] has

not submitted admissible proof that the damage to the engine did not result from wear and tear or

a mechanical breakdown or failure, he is unable to establish that Safeco is in breach of the

insurance contract." *Id.*  Accordingly, summary judgment was granted in favor of the insurer. *Id.*[10]

   Just as in these Eastern District of Tennessee cases, Plaintiff cannot proceed with his non-

cosmetic roof damage claim and/or tool damage claim without expert proof as to causation,

especially where Defendants' considerable, uncontroverted, expert proof supports West

American's coverage decision.  Moreover, other district courts have held (a) an insured must rebut

an insurer's expert-supported decision to deny hail roof damage claims, including cosmetic

---

[9] The Court in *Clark v. Safeco* recognized that Federal Rule of Evidence 701 provides that when a witness is not testifying as an expert, opinion testimony is "limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *Id.* Additionally, the Court held that "[t]he commentary to Rule 701 refers to these witnesses as 'fact' witnesses. Fact witness testimony may be relevant because it is based on first-hand knowledge — the witness knows something to be true because they saw something, heard something, experienced something, *i.e.*, they were *there*."

[10] *See also Advanced Mech. Servs. v. Auto-Owners Ins. Co.*, No. 3:14-cv-388-DJH-CHL, 2017 U.S. Dist. LEXIS 123277, at *2 (W.D. Ky. Aug. 4, 2017), (holding that "[b]ecause Plaintiffs lack expert testimony to support their claim for replacement of machinery, and because they have not shown that they are entitled to replacement of undamaged siding to achieve 'matching,' Auto-Owners' motion for summary judgment will be granted", in addition to finding that "[t]estimony that the machines are damaged beyond repair requires 'scientific, technical, or other specialized knowledge,'..[t]o the extent he relies on the representations of individuals who unsuccessfully attempted to repair the machines… his affidavit contains inadmissible hearsay and may not be considered" and "without proof of damages, Plaintiffs' claim for breach of the policy fails.").

damage claims, and (b) have summarily dismissed the insured's claims where the insured provided no expert support for its position, as set forth below.

<u>*Federal Holdings Nationwide on Necessity of Expert Proof for Roof Damage Claims*</u>

Federal courts have consistently held that expert proof is required to establish causation of damages in insurance coverage disputes like the one at issue here: roof damage due to hail.  For example, in *Nesavich v. Auto-Owners Ins. Co.*, the Colorado District Court considered whether to grant summary judgment in favor of the insurer where the plaintiffs failed to provide any expert testimony regarding causation of the property damage. No. 16-CV-01493-PAB-STV, 2018 WL 3729513, at *1 (D. Colo. Aug. 6, 2018). Importantly, the *Nesavich* court held that while the "plaintiffs can present evidence that a hailstorm occurred on May 21, 2014 and that their building was damaged by hail", the plaintiffs lacked any "evidence that ties the May 21, 2014 hailstorm to roof damage, damage to the east-facing windows, or damage to the HVAC units." *Id.* at *6. The *Nesavich* court ultimately held that "the opinions that plaintiffs seek to rely on concerning the size of hail that struck the roof and the findings of the desaturation report require specialized knowledge and, therefore, are not a proper subject of lay opinion testimony." *Id.* at *5. Based on the failure of the plaintiffs to produce any expert proof to support their claim that the damage at issue was caused by hail, the *Nesavich* court held the evidence submitted by the plaintiffs was "insufficient to show a genuine issue of material fact for trial." *Id.* at *6.

Similarly, in *York v. Safeco Ins. Co. of Am.*, a federal district court held the "[p]laintiff's lay testimony that she observed a hailstorm at the [p]roperty on July 23, 2018, is insufficient to establish that the claimed damage to her roof, windows, or stucco was caused by hail on that date…"  540 F. Supp. 3d 1049, 1055 (D. Colo. 2021).  Where the plaintiff did not "personally observe[] damage caused by hail on that date or shortly thereafter, the plaintiff's "testimony is

insufficient to create a genuine issue of material fact for trial." *Id.*   Thus, the insurer's motion for summary judgment was granted.

Other federal districts agree with the position taken by the courts in *Nesavich* and *York*. *See HM Hotel Properties*, 2013 WL 4507602, at *3 (D. Ariz. Aug. 23, 2013) (finding that evidence about damage to a roof and repairs necessary to fix it requires "specialized knowledge [that] is beyond the ken of an average juror or lay witness."). *Vintage Hosp. Grp. LLC v. Nat'l Tr. Ins. Co.*, 565 F. Supp. 3d 1365, 1372–73 (M.D. Ga. 2021) ("Rule 702's helpfulness requirement rests upon the notion that expert opinion testimony should be restricted to "matters that are beyond the understanding of the average lay person" and specifically holding that assessing "the nature and cause of damage to roofs … is 'beyond the 'understanding of the average lay person'".)

### C.    Plaintiff Has Failed to Offer Any Expert Proof Establishing that West American Breached the Policy.

In the present case, Plaintiff has not offered any expert testimony at all, much less any expert proof establishing that the Alleged Storm Event caused functional, non-cosmetic damage to the Property's roofs (or that alleged personal property damage was caused by the Alleged Storm Event or that the ACV payment is insufficient), and as such, Plaintiff cannot prove its case that covered damage exists pursuant to the terms and conditions of the Policy. (**Ex. 1** at ¶ 22.) Most importantly, the only evidence in the record, as established by Defendants' experts, Mr. Williamson and Mr. Moon, shows any damage to the roofs caused by the Alleged Storm Event was cosmetic in nature and did not affect the functionality or longevity of the roofs. (*Id.* at ¶¶ 15–20; Ex. E p. 5; Ex. G p. 2.)

Similar to *Nesavich,* in the present case, the issue of whether the Alleged Hail Damage is cosmetic or not "require[s] specialized knowledge and therefore, [is] not a proper subject of lay opinion testimony." *Nesavich*, 2018 WL 3729513, at *5. Further, similar to *Clark*, here, "without

[expert witnesses] … there is no expert testimony to support [Plaintiff's] allegation that the [Alleged Hail Damage]" is non-cosmetic and "[b]ecause [Plaintiff] has not submitted admissible proof that the [Alleged Hail Damage]" is non-cosmetic "[it] is unable to establish that [Defendants] are in breach of the insurance contract." *Clark*, 2018 U.S. Dist. LEXIS 210781 at *6.

<u>*No Admissible Proof Cosmetic Loss and Tool Causation Evidence*</u>

Plaintiff is required to provide expert proof to establish that the Alleged Hail Damage is non-cosmetic and affected the functionality or longevity of the roofs at issue. *Clark*, 2018 U.S. Dist. LEXIS 210781, at *6; *Nesavich*, 2018 WL 3729513, at *1; *HM Hotel Properties*, 2013 WL 4507602, at *4; *Vintage Hosp. Grp. LLC v. Nat'l Tr. Ins. Co.*, 565 F. Supp. 3d 1365, 1372–73 (M.D. Ga. 2021). Here, Plaintiff identified no experts via Rule 26 Expert Disclosures or otherwise. (**Ex. 1** at ¶ 22.) This failure is enough to warrant summary dismissal of Plaintiff's claims related to the Alleged Hail Damage.

Casting about in search another source of expert evidence to assist Plaintiff, it is clear Plaintiff cannot serve in that capacity. Plaintiff's corporate representative, Mr. Eddings, clearly testified that he lacks any professional experience as a roofer and that neither he, nor anyone else identified by Plaintiff, is qualified to offer expert testimony on whether the Alleged Hail Damage is non-cosmetic in nature or as to causation of the alleged personal property damage. (**Ex. 2** at 28:22-23; 41:22-23; 46:21-47:11 **Ex. 3** at 15:25; 16:15-25; 103:25-104:2.) In this regard, Mr. Eddings has "never walked on the roof", he and his "employees… ain't roofers", and in this regard, specifically when asked about the how the alleged to the interior of the main building occurred he testified "I'm not a roofer, I don't know." (**Ex. 2** at 28:22-23; 41:22-23; **Ex. 3** at 15:25.) Moreover, Mr. Eddings nor any of Plaintiff's employees observed the Alleged Storm Event. (**Ex. 2** at 26:13-27:2.) Thus, Plaintiff has no admissible proof regarding causation of the Alleged Hail Damage.

Moreover, Plaintiff has no proof to rebut Defendants' well-supported position regarding non-coverage for the Alleged Hail Damage. Each of Defendants' three (3) experts have concluded the Alleged Hail Damage is cosmetic in nature and that the functionality of the roofs were not affected by the Alleged Hail Damage. (**Ex. 1** at ¶¶ 15-19, Exs. E & G; **Ex. 4**.) Specifically, Mr. Williamson found that the Alleged Hail Damage was cosmetic in nature and that "the functionality of the roof[s] [have] not been affected by the hail." (**Ex. 1** at ¶ 16, Ex. E.)  Defendants' trial expert, Brian Moon, found that the Alleged Hail Damage "would **<u>not</u>** affect the functionality or longevity of the materials" and his "observations indicated a presence of roughly circular indentions without surface coating damage or ruptured metal…" (**Ex. 1** at ¶ 18, Ex. G.)

As a result, Plaintiff has no admissible proof rebutting the conclusions of Defendants' three (3) expert witnesses and Plaintiff's claim should be summarily dismissed.

<u>No Admissible Proof Regarding Sufficiency of ACV Payment from West American</u>

With regard to the actual cash value paid by West American prior to the lawsuit, Plaintiff alleged in Paragraphs 16-20 of the Complaint that Defendants severely undervalued the claim. [ECF No. 01-1.]  However, when asked what support Plaintiff had to substantiate these allegations, Mr. Eddings testified "I didn't set the processes that are on these quotes; you know what I mean? So, how do I know if it's undervalued or overvalued?" (**Ex. 2** at 74:2-76:20.)

Plaintiff is required to provide expert proof to challenge the sufficiency of West American's payments for the Alleged Hail Damage.  *Southside Leasing Co.*, 1989 WL 128506 at *1 (holding "testimony on cost of repairs" is "really expert testimony"); *see also Providence Piers, LLC*, 2015 WL 9699936 at *8 ("…courts overwhelmingly hold that estimating the cost of a complex repair … are not common knowledge or familiar in everyday life; accordingly, predicting future repair costs requires specialized knowledge and is expert, not lay, testimony."); *Wickman*,

616 F. Supp. 2d at 920-21. Again, Plaintiff identified no experts via Rule 26 Expert Disclosures or otherwise.  (**Ex. 1** at ¶ 22.)

Moreover, Plaintiff cannot substitute its representatives' testimony for that of the required expert.  *Clark*, 2018 U.S. Dist. LEXIS 210781, at \*8.  Indeed, Plaintiff's corporate representative admitted that neither he nor any of Plaintiff's employees are not contractors or roofers, and Plaintiff does not know whether the estimates are sufficient or not.  (**Ex. 2** at 41:22-23; **Ex. 3** at 19:24-25; 27:1-9; 51:11-52:6.)  In fact, the only provided contrary is an estimate developed by Mr. Griffin, who (a) notably, was not disclosed as an expert and (b) in any event, cannot provide expert proof in this matter due to his financial interest in the outcome of the lawsuit.  *Compare* **Ex. 3** at 86:9-13; 87:21-88:4 with *Wheatridge Office, LLC*, 2022 WL 36137, at \*14 (holding "'[o]nce the expert obtains a direct financial interest in the outcome of the litigation … any semblance of independence or promise of intellectual rigor that normally adheres to an expert witness is fatally wounded.'")  Simply, Plaintiff has no admissible proof to support an argument that West American's payments are insufficient, much less expert proof.

Conversely, Defendants have proffered Tim Kelley as an expert, who opines the $48,584.95 paid to Plaintiff is sufficient to compensate Plaintiff for the damage to the Property, excluding the roofs. (**Ex. 4**, Ex. 5; **Ex. 1** at ¶ 12.)  Indeed, Mr. Kelley's estimated cost of repairs is lower than the amount West American paid to Plaintiff prior to the filing of this lawsuit.  (*Id.*)  In light of Plaintiff's failure to offer any expert proof refuting Defendants' position, Plaintiff's breach of contract claim must be dismissed.

### D.   Plaintiff Has Failed to Establish a Breach of Contract Claim.

Under Tennessee law, a party must prove three (3) elements in a successful breach of contract claim: (i) the existence of an enforceable contract; (ii) nonperformance amounting to a

breach of that contract; (iii) damages resulting from that breach. *ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005). In Tennessee, a court's role is to enforce a contract as written unless the contract is being challenged on the basis of fraud or mistake. *Boyd v. Comdata Network, Inc.*, 88 S.W. 3d 203, 223 (Tenn. Ct. App. 2002); *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975) ("The courts, of course, are precluded from creating a new contract for the parties.") Tennessee courts "will not relieve parties of their contractual obligation simply because these obligations later prove to be burdensome or unwise." *Vargo v. Lincoln Brass Works, Inc.*, 115 S.W.3d 487, 492 (Tenn. Ct. App. 2003).

The interpretation of an insurance contract is governed by the same rules of construction used to interpret other types of contracts, and policies must be interpreted fairly and reasonably. *Wilson v. State Farm Fire & Cas. Co.*, 799 F. Supp. 2d 829, 835 (E.D. Tenn. 2011); *Travelers Indem. Co. of Am. v. Moore & Assocs.*, 216 S.W.3d 302, 305–06 (Tenn. 2007.) "When the provisions of an insurance policy are clear and unambiguous, a court's construction of the policy should favor neither party." *Wilson*, 799 F. Supp. 2d at 835 (citing *Brown v. Tennessee Auto. Ins. Co.*, 237 S.W.2d 553, 554 (Tenn. 1951); *Massachusetts Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 20 (Tenn. Ct. App. 2002)). "Under Tennessee law, an insured is conclusively presumed to have knowledge of the terms of his or her insurance contract, and the insured is bound by the terms of that policy." *Id.* (citing *De Ford v. Nat. Life & Acc. Ins. Co.*, 185 S.W.2d 617, 621 (Tenn. 1945)).

Federal courts have recognized that cosmetic loss exclusions in insurance policies, similar to the one at issue in this lawsuit, are enforceable. Specifically, in *Farris v. State Farm Lloyds*, No. H-19-3872, 2021 U.S. Dist. LEXIS 21311, at *6 (S.D. Tex. Feb. 4, 2021), the court considered whether to grant summary judgment to the insurer on the insured's breach of contract claim relating to alleged hail damage. The policy contained a cosmetic loss exclusion that excluded

coverage for cosmetic damage to a roof. *Id.* at *11. The *Farris* court held that, "[Plaintiff's expert] testified that although hail hit the ridge cap of the metal roof, it did not create any penetrations or water intrusion… (no hail impacts that were related to water intrusions, and none that causes penetrations or openings in the roof)."  *Id.* at *11-12. Ultimately, the court held "[t]here is no evidence that any hail damage to the metal roof was not merely 'cosmetic' as defined by the Policy and within the Cosmetic Damage Endorsement exclusion" and "[a]s a result, State Farm is entitled to summary judgment on the breach of contract claim regarding Area of Interest # 3, the metal roof." *Id.* at *12.[11]

Here, Plaintiff's breach of contract claim must fail because West American fully complied with its obligations under the Policy and did not breach the Policy.  Importantly, West American's obligation under the Policy was to pay the cost to either repair or replace Plaintiff's covered Property damages during the Alleged Storm Event. (D.E. 8-1 at PageID 36; PageID 170; **Ex. 1** at ¶ 7.)  Per the undisputed material facts, West American timely investigated Plaintiff's claim, issued $48,584.95 to Plaintiff, and retained three (3) separate experts to evaluate whether any additional covered damages existed, each of which determined that the Alleged Hail Damage was cosmetic in nature. (**Ex. 4**) Conversely, Plaintiff has submitted no admissible evidence the Alleged Hail Damage is "not merely 'cosmetic' as defined by the Policy and within the [Cosmetic Loss Exclusion]." *Id.*

Based on the findings of its experts, West American was obligated to issue payment to Plaintiff for the actual cash value of the damaged siding of the buildings until the repair or

---

[11] *See also Great Lakes Ins., S.E. v. Highland W. LLLP,* Civil Action No. 19-cv-00508-LTB, 2020 U.S. Dist. LEXIS 248139, at *17 (D. Colo. Aug. 13, 2020) (in case where policy included Cosmetic Loss Exclusion, holding "since the metal panel siding was only cosmetically damaged and it clearly falls within the definition of 'siding,' it is excluded from coverage" and "[s]ummary judgment is GRANTED as to the metal panel siding and, as a result, IT IS DECLARED that the Policy provides no coverage for damage to the metal panel siding pursuant to the Cosmetic Loss Exclusion").

replacement of the siding had been effectuated. (D.E. 8-1 at PageID 170; **Ex. 3** at 120:11-18.)  In

compliance with the Policy and its initial estimate, West American issued $48,584.95 to Plaintiff

(after application of the $1,000 deductible).  (**Ex. 1** at ¶ 12, Ex. D.)  Tim Kelley opines that West

American's $48,584.95 was sufficient for the observable loss, excluding the roofs.  (**Ex. 4**, Ex 5.)

Replacement cost is not yet due to Plaintiff under the Policy, because, Plaintiff has not replaced

nor repaired the siding on the buildings. (**Ex. 2** at 35:8-16; **Ex. 3** at 51:2-52:24.)

The undisputed facts demonstrate that West American has performed its obligations under

the Policy and has timely paid the covered portion of Plaintiff's claim, and Plaintiff's breach of

contract claim fails as a matter of law.

### E.     Plaintiff's Claim for Attorneys' Fees Fails as a Matter of Law.

Plaintiff's Complaint also seeks an award of attorneys' fees. [ECF No. 1-1, Prayer For

Relief at ¶ 2.] Under Tennessee law, a litigant is generally not awarded attorney fees against the

opposing party. *See Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017). "Tennessee has

long followed the 'American Rule' with regard to attorney's fees;" such rule "provides that a party

in a civil action may recover attorney's fees only if (1) a contractual or statutory provision creates

a right to recover attorney's fees; or (2) some other recognized exception to the American Rule

applies, allowing for recovery of such fees in a particular case." *Id.* Although one common

exception to the American Rule involves contracts containing attorney fee provisions, a party who

prevails in litigation concerning contractual rights may only recover reasonable attorneys' fees

"once they demonstrate that the contract upon which their claims are based contains a provision

entitling the prevailing party to its attorney fees." *Id.*

First, Plaintiff cites to and reference no statute in support of its attorneys' fees claim.  [*See

generally* ECF No. 1.)  Second, Plaintiff's request for attorneys' fees fails as a matter of law against

Liberty, because Liberty did not underwrite the Policy and no contract exists between Plaintiff and Liberty. [ECF No. 1 PageID 3; ECF No. 08-0 at ¶¶ 2-3, 7.]

Third and finally, the only contract at issue – the Policy – does not contain any provision entitling Plaintiff to attorneys' fees. [*See generally* ECF No. 08-1]. As such, even if Plaintiff prevailed in litigation, it would be unable to demonstrate that its contract with West American contains any provision entitling it to attorneys' fees. As such, there is no support, statutory, factual, or otherwise, for Plaintiff's attorneys' fees claim against either Liberty or West American, and therefore both Defendants are entitled to summary judgment with respect to Plaintiff's demand for attorneys' fees.

## V.    <u>Conclusion</u>

Expert testimony is required in order for Plaintiff to prove that (a) functional, non-cosmetic damage occurred to the Property's roofs as a result of the Alleged Storm Event, (b) the alleged tool damage was caused by the Alleged Storm Event, and (c) West American's prior payments are insufficient. While Defendants have timely offered the opinions of three (3) experts, all of whom confirm and agree with Defendants' position, Plaintiff has offered no expert proof.  Plaintiff's time for disclosing expert proof to Defendants has expired and should not re-opened, especially given the number of motions Defendants have had to file in this case related to Plaintiff's failures to participate in discovery or abide Court deadlines.  [ECF Nos. 24, 25, 26, 32, 33, & 44.]  *See also In re Drayton Berkley*, No. 1:22-cv-01134-STA-jay, ECF No. 41 (W.D. Tenn. April 3, 2023); *D&R Servs., LLC v. Mesa Underwriters Specialty Ins. Co.*, No. 1:22-CV-1087-STA-JAY, 2023 WL 2918780 (W.D. Tenn. Apr. 12, 2023).

As a result, Plaintiff has failed to prove the essential elements of its breach of contract claim and Plaintiff's lone cause of action asserted in this action should be dismissed.  In fact, the

only admissible proof before the Court shows West American paid Plaintiff's claim in full, prior to the filing of this lawsuit.  Additionally, Plaintiff has failed to provide any support – statutory, factual, or otherwise – substantiating Plaintiff's attorneys' fees claim against Liberty or West American, and thus, Plaintiff's attorneys' fee claim should be dismissed. Finally, Plaintiff cannot pursue a breach of contract against Defendant Liberty, because no contract exists between Plaintiff and Liberty.  For the foregoing reasons, Defendants respectfully request summary dismissal of Plaintiff's claims.

Respectfully submitted,

*/s/Brian C. Neal*
Brian C. Neal (BPR #022532)
Kate A. Hamilton (BPR #039331)
BURR & FORMAN LLP
222 Second Ave. South, Suite 2000
Nashville, TN 37201
Telephone: (615) 724-3246
Facsimile: (615) 724-3346

*Attorneys for Defendant West American Insurance Company and Improperly Named Defendant Liberty Mutual Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of June 2023, a copy of the foregoing was served via the Court's CM/ECF system on the following:

Drayton D. Berkley, Esq.
Berkley Law Firm, PLLC
1255 Lynnfield Ste. 226
Memphis, TN 38119
attorneyberkley@gmail.com
P.O. Box 771048
Memphis, TN 38177

*/s/Brian C. Neal*