IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| J&S WELDING INC., | ) |
|       Plaintiff, | ) |
| | ) Case No. 1:22-cv-01122 |
| v. | ) |
| | ) JURY DEMAND |
| LIBERTY MUTUAL INSURANCE | ) |
| COMPANY and WEST AMERICAN | ) *(Removed from the Gibson County Circuit* |
| INSURANCE COMPANY, | ) *Court, Case No. H4227)* |
| | ) |
|       Defendants. | ) |

**DEFENDANTS LIBERTY MUTUAL INSURANCE COMPANY AND WEST AMERICAN INSURANCE COMPANY'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Rule 56.1(a) of the Local Rules for the United States District Court for the Western District of Tennessee, Defendant West American Insurance Company ("West American") and improperly named Defendant Liberty Mutual Insurance Company ("Liberty") submit this statement of material facts to which there is no genuine issue to be tried in support of their Motion for Summary Judgment.

**RELEVANT AND UNDISPUTED MATERIAL FACTS**

1. Plaintiff owns the real property located at 2579 North 9th Avenue, Humboldt, Tennessee 38343 on which two (2) commercial shop buildings – a large shop building which faces east toward North 9th Avenue, and a smaller building located west of the main building are located (the "Property"). (Declaration of Teresa Herman, June 2, 2023 ("Herman Dec."), at ¶ 4, attached to Motion as **Exhibit 1**.)

**RESPONSE NO. 1:**

2. The roofs of the two (2) commercial shop buildings are covered by metal panels; the roof atop the large shop building is the same metal roof that was installed in 1982 and 1983. (Beau Eddings' Deposition, March 24, 2023 at 41:22-24; 69:17-20; 73:2-18, attached to Motion as **Exhibit 2**; Beau Eddings' Deposition, April 21, 2023 at 16:12; 17:4-10; 92:20-93:7, attached to Motion as **Exhibit 3**; **Ex. 1** at ¶ 15, Ex. E p. 1; **Ex. 1** at ¶ 18, Ex. G p. 2.)

**RESPONSE NO. 2:**

3. On June 25, 2021, nearly a year after the Alleged Storm Event, Plaintiff's public adjuster, William Griffin ("Mr. Griffin"), filed a claim with West American related to alleged hail damage that had occurred to the roofs of the main shop building and a smaller building on the Property during the summer of 2020 ("Alleged Hail Damage"). (**Ex. 1** at ¶ 9.)

**RESPONSE NO. 3:**


4. On June 29, 2021, West American received a Letter of Representation from Mr. Griffin advising that Mr. Griffin was the public adjuster for Plaintiff. (*Id.* at ¶ 10, Ex. B.)

**RESPONSE NO. 4:**

5. On November 4, 2019, West American issued a Commercial General Liability insurance policy to Plaintiff bearing Policy No. BKW (20) 56 41 58 45 with a policy period of November 4, 2019 through November 4, 2020 providing certain coverages for the Property (the "Policy") [D.E. 8-1 at PageID 31; **Ex. 1** at ¶¶ 4-9, Ex. A.]

**RESPONSE NO. 5:**

6. The Policy contains the following language:

**Commercial Property Declaration Schedule -Revised**

**SUMMARY OF PROPERTY COVERAGES - BY LOCATION**

**Building Coverage**

**Occupancy:** Welding or Cutting - Welding Shops
**Description**

| | |
|---|---|
| Limit of Insurance – Replacement Cost | **$233,772** |

\* \* \*

\* \* \*

**Covered Causes of Loss**

| | |
|---|---|
| Special Form – Including Theft | |
| Deductible – All Covered Causes of Loss Unless Otherwise Stated | $1,000 |
| Roof Surfacing Cosmetic Loss Exclusion | See Endorsement CP8836 |

(D.E. 8-1 at PageID 36; **Ex. 1** at ¶ 7, Ex. A.)

**RESPONSE NO. 6:**

7. The Policy also states the following:

**ROOF SURFACING COSMETIC LOSS EXCLUSION**

\* \* \*

**We will not pay for "cosmetic loss or damage" to any "roof surface" caused by wind and/or hail.** For the purpose of this endorsement, "cosmetic loss or damage" means marring, pitting or other superficial damage caused by wind/and or hail that alters the physical appearance, but does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the "cosmetic loss or damage" occurred.

"Roof surface" refers to the shingles, tiles, flashing, cladding, metal or synthetic sheeting or any other materials used for the roof, including all materials applied to or under the roof for protection or insulation from moisture or the elements.

(D.E. 8-1 at PageID 193, CP 88 36 10 13, **Ex. 1** at ¶ 8, Ex. A.) (emphasis added) ("Roof Cosmetic Loss Exclusion").

**RESPONSE NO. 7:**

8. Further, the Policy provides the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM

\* \* \*

**G.    Optional Coverages**
If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

\* \* \*

**3.    Replacement Cost**
  **a.**    Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.  **…**
  **d.**    We will not pay on a replacement cost basis for any loss or damage:
      **(1)**    Until the lost or damaged property is actually repaired or replaced; and
      **(2)**    Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

(D.E. 8-1 at PageID 170; **Ex. 1**, Ex. A.)

**RESPONSE NO. 8:**

9.    Liberty did not issue or underwrite the Policy.  [ECF No. 1 PageID 3; ECF No. 08-0 at ¶¶ 2-3, 7; **Ex. 1** at ¶ 4, Ex. A.]

**RESPONSE NO. 9:**

10.    West American retained Larry Ransom from Sedgwick Claims Management Services to conduct an initial inspection of the Property on July 21, 2021. (**Ex. 1** at ¶ 11.)

**RESPONSE NO. 10:**

11.    Mr. Ransom provided an estimate listing an actual cash value for the covered portion of Plaintiff's claim of $49,584.95, and a total replacement cost value of $57,189.88. (*Id; see also* Defendants' Expert Witness Disclosures, attached to Motion as **Exhibit 4**, Ex. 5.)

**RESPONSE NO. 11:**

12. West American issued payments to Plaintiff in the amount of $48,584.95 (after application of the $1,000 deductible), including, but not limited to, payments for repairs in accordance with the Policy. (**Ex. 1** at ¶ 12, Ex. D; **Ex. 2** at 75:15-16, **Ex. 3** at 81:22-82:7.)

**RESPONSE NO. 11:**

13. Plaintiff accepted and cashed the check issued by West American in the amount of $48,584.95. (**Ex. 1** at ¶ 13; **Ex. 2** at 75:15-16, **Ex. 3** at 81:22-82:7.)

**RESPONSE NO. 13:**

14. Plaintiff objected to West American's initial coverage determination and averred that the $48,584.95 payment issued for repairs was insufficient, claiming that the damage to the Property's roofs was not merely cosmetic. (**Ex. 1** at ¶ 13; **Ex. 3** at 82:8-18, Ex. 12.)

**RESPONSE NO. 14:**

15. In September of 2021, West American retained an engineer from Donan Engineering Co., Inc., Michael Williamson ("Mr. Williamson"), to further inspect the Alleged Hail Damage. (**Ex. 1** at ¶ 14.)

**RESPONSE NO. 15:**

16. Mr. Williamson inspected the Property on October 1, 2021 and prepared a Report of Findings dated October 6, 2021. (**Ex. 1** at ¶ 15, Ex. E; **Ex. 4**, Exs. 1 & 2.)

**RESPONSE NO. 16:**

17. In his Report of Findings, Mr. Williamson found that minor hail damage occurred to both buildings on the Property and most likely occurred during recorded storm events in May 2020. (**Ex. 1** at ¶ 16, Ex. E at p. 3-5; **Ex. 4**, Exs. 1 & 2.)

**RESPONSE NO. 17:**

18. Mr. Williamson concluded that "the dents [on the roof covering] are due to hail strikes, but the damage is cosmetic in nature" as "the functionality of the roof[s] [have] not been affected by the hail." (**Ex. 1** at ¶ 16, Ex. E at p. 5.) Mr. Williamson also determined that "hail impacts would not result in the 3 foot to 5-foot long lifting of the overlap seams as is present on the main building" and that "the lifted panels are the result of deferred maintenance" and with respect to the main building, that "the leaks are due to missing screws and degraded sealant on the roof." (*Id.*)

**RESPONSE NO. 18:**

19. On October 7, 2021, West American emailed Mr. Griffin, as Plaintiff's public adjuster, advising it had determined the Alleged Hail Damage "are cosmetic in nature and has not affected the function or longevity of the roof" and that "[t]herefore because of the Roof Surfacing Cosmetic Loss Exclusion on the policy our original estimate stands." (**Ex. 1** at ¶ 17, Ex. F.)

**RESPONSE NO. 19:**

20. On April 25, 2022, Plaintiff filed suit against Defendants in the Circuit Court of Gibson County, Tennessee asserting only one cause of action: breach of contract. [ECF No. 01-1.]

**RESPONSE NO. 20:**

21. Plaintiff specifically alleged that "[o]n or about August 21, 2020 … "[t]he Insured Premises were seriously damaged by high winds and hailstorm compromising the Plaintiff's roofing system, and siding …" and Defendants "…severely undervalued the claim". [ECF No. 01-1 ¶¶ 11, 22.] However, Plaintiff's corporate representative, Beau Eddings, later testified this date is incorrect and that the Alleged Storm Event occurred on May 4, 2020. (**Ex. 2** at 24:22-26:1.)

**RESPONSE NO. 21:**

22. Plaintiff also asserted that Defendants "refuse to pay the true amount of the loss, which is a material breach of the" Policy and requested compensatory damages in an amount up to $250,000. (*Id.* at ¶ 26, Prayer For Relief at ¶ 1.)

**RESPONSE NO. 22:**

23. Plaintiff also alleged "William Griffin prepared an estimate as a public adjuster" regarding the Alleged Hail Damage. (*Id.* at ¶ 13.)

**RESPONSE NO. 23:**

24. Defendants removed this case to this Court on June 9, 2022. [ECF No. 01-0.]

**RESPONSE NO. 24:**

25. Defendants denied Plaintiff's claims and again gave notice to Plaintiff of its position that the alleged roof damage was excluded by the Roof Cosmetic Loss Exclusion. [See generally ECF No. 8, including Aff. Def. ¶ 4.]

**RESPONSE NO. 25:**

26. On September 9, 2022, this Court entered a Scheduling Order providing, among other deadlines, that Plaintiff had until May 8, 2023 to provide its expert witness disclosures. (ECF No. 16; **Ex. 1** at ¶ 21.)

**RESPONSE NO. 26:**

27. As of the filing of this Motion, Plaintiff has not disclosed any expert witnesses and has not provided any reports from its expert witnesses. (**Ex. 1** at ¶ 22.)

**RESPONSE NO. 27:**

28. On August 9, 2022, counsel for Defendants and Brian Moon attended a site inspection of the Property. (**Ex. 1** at ¶ 18.)

**RESPONSE NO. 28:**

29. West American retained Brian Moon, a structural engineer at EnVista Forensics ("EnVista"), to re-evaluate whether any wind or hail-related roof damage occurred to the Property related to the Alleged Storm Event (or otherwise). (*Id.*)

**RESPONSE NO. 29:**

30. Following his site inspection on August 9, 2022, Mr. Moon issued a written Report of Findings dated January 6, 2023. (*Id.*, Ex. G.)

**RESPONSE NO. 30:**

31. Mr. Moon personally inspected the exterior buildings, wall siding, gutters, downspouts, and siding for hail damage. (*Id.*)

**RESPONSE NO. 31:**

32. Mr. Moon found that "indentions in the metal components without associated surface coating damage or ruptured metal would constitute damage that would **not** affect the functionality or longevity of the materials." (*Id.* at p. 5.)

**RESPONSE NO. 32**

33. Mr. Moon found that his "observations indicated a presence of roughly circular indentions without surface coating damage or ruptured metal…". (**Ex. 1** at ¶ 19, Ex. G at p. 5.)

**RESPONSE NO. 33:**

50960218 v1

8

34. Mr. Moon observed a sealant that had been put on the portion of the main commercial building's roof which was owned by Plaintiff. (**Ex. 1**, Ex. G p. 4.)

**RESPONSE NO. 34:**

35. During Mr. Moon's inspection, he was able to observe the unsealed portion of the roof directly adjacent to the sealed portion. (**Ex. 1**, Ex. G p. 4-5.)

**RESPONSE NO. 35:**

36. Mr. Moon determined the minor hail damage observed at the Property "will not affect the functionality or longevity of the roof covering and wall siding." (**Ex. 1** at ¶ 19, Ex. G at p. 2.)

**RESPONSE NO. 36:**

37. Plaintiff's corporate representative, Beau Eddings ("Mr. Eddings"), testified that the only repairs he made to the Property with the $48,584.95 payment from West American was to apply the roof sealant and repair certain electrical issues to the main building. (**Ex. 2** at 35:13-16; *Id.* at 75:16-76:7; **Ex. 3** at 31:7-33:11.)

**RESPONSE NO. 37:**

38. West American retained Tim Kelley from West Tennessee Restoration to conduct a site inspection on August 9, 2022 and evaluate the Property for estimated costs of repairs associated with the Alleged Hail Damage. [**Ex. 4**, Ex. 5.]

**RESPONSE NO. 38**

39. Mr. Kelley determined that any hail damage to the roof was "so minor in nature that it does not appear in photos nor would it effect the functionality of the roof." (*Id.*)

**RESPONSE NO. 39:**

40. Mr. Kelley prepared an estimate regarding the total replacement cost value estimate of $55,311.71, which is approximately $1,878.17 less than the initial replacement cost value estimate prepared by Liberty's representatives prior to the lawsuit being filed in the amount of $57,189.88. (*Id.;* **Ex. 1** at ¶¶ 11-12, Ex. C.)

**RESPONSE NO. 40**

41. West American contends any roof damage observed at the Property related to the Alleged Storm Event constitutes "cosmetic loss or damage" and is specifically excluded by the Policy. (**Ex. 1** at ¶ 20.)

**RESPONSE NO. 41:**

42. On March 24, 2023 and April 21, 2023, Defendants' counsel deposed Plaintiff's corporate representative, Beau Eddings.

**RESPONSE NO. 42:**

43. Mr. Eddings testified that at the time of the Alleged Storm Event he "was at home…it was right after quitting time, time to go home. We all kind of drove into it on our way home" and that no one was present at the Property during the Alleged Storm Event. (**Ex. 2** at 26:13-27:2.)

**RESPONSE NO. 43:**

44. Mr. Eddings testified that he has not had anyone replace the middle panels or insulation on the sides of either building at the Property since he purchased the Property in December 2013. (*Id.* at 35:8-16.)

**RESPONSE NO. 44:**

45.     Mr. Eddings testified that after the Alleged Storm Event, he paid Shrocks Roofing $15,200 to apply sealant on the portion of the roof Plaintiff owned of the large shop building. (*Id.* at 38:7-12; **Ex. 3** at 42:20-24.)

**RESPONSE NO. 45:**

46.     Mr. Eddings testified that he has "never walked on the roof" and in response to Defendants' counsel inquiring what knowledge J&S has about the cost to repair the Alleged Hail Damage, Mr. Eddings testified "I'm not a contractor or a roofer, I really don't know." (**Ex. 2** at 41:22-23; **Ex. 3** at 19:24-25.)

**RESPONSE NO. 46:**

47.     Mr. Eddings testified "…I'm not a roofer. Like I said, I'm not a contractor. I don't build buildings" and "I do not know if that's what it would take or not, I really don't. It's a big building, industrial steel. There's a lot of to go by, you know, rules to get it done. I can't say that that number will cover it or it won't cover it." (**Ex. 3** at 27:4-9; 52:2-4.)

**RESPONSE NO. 47:**

48.     Mr. Eddings testified that other than William Griffin, no one else has given Plaintiff estimates for what it would cost to replace the roofs and when asked what support Plaintiff has to substantiate its allegation in Paragraphs 16-20 of the Complaint that Defendants severely undervalued Plaintiff's claim, Mr. Eddings testified "I didn't set the process that are on these quotes; you know what I mean? So, how do I know if it's undervalued or overvalued?" (**Ex. 2** at 70:10-12; 76:8-20.)

**RESPONSE NO. 48:**

49. Mr. Eddings testified that he would pay Mr. Griffin ten percent (10%) of any recovery obtained from this lawsuit and that he has already paid Mr. Griffin ten percent (10%) of the $48,584.95 payment West American issued to Plaintiff for Mr. Griffin's services as Plaintiff's public adjuster. (**Ex. 3** at 86:9-13; 87:21-88:4.)

**RESPONSE NO. 49:**

50. West American propounded its First Set of Interrogatories and Requests for Production on Plaintiff on or about September 8, 2022. [ECF No. 33-1.]

**RESPONSE NO. 50:**

51. In its responses, Plaintiff produced a document entitled "Tool List 1" and "Tool List 2", which listed tools and equipment that Plaintiff claimed were damaged as a result of the alleged storm event and included a total repair amount of $35,200.00. [ECF 33-2.]

**RESPONSE NO. 51:**

52. Plaintiff has articulated a claim for loss of tools within the large commercial building, but Plaintiff has identified no expert to opine that the claimed tool damage was caused by the Alleged Storm Event. (**Ex. 1** at ¶ 22.)

**RESPONSE NO. 52:**

Respectfully submitted,

*/s/Brian C. Neal*
Brian C. Neal (BPR #022532)
Kate A. Hamilton (BPR #039331)
BURR & FORMAN LLP
222 Second Ave. South, Suite 2000
Nashville, TN 37201
Telephone: (615) 724-3246
Facsimile: (615) 724-3346

*Attorneys for Defendant West American Insurance Company and Improperly Named Defendant Liberty Mutual Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of June 2023, a copy of the foregoing was served via the Court's CM/ECF system on the following:

> Drayton D. Berkley, Esq.
> Berkley Law Firm, PLLC
> 1255 Lynnfield Ste. 226
> Memphis, TN 38119
> attorneyberkley@gmail.com
> P.O. Box 771048
> Memphis, TN 38177
>
> */s/Brian C. Neal*