**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DIVISION OF TENNESSEE
EASTERN DIVISION**

| | |
|---|---|
| **J&S WELDING, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **vs.** ) | **No. 1:22-cv-01122-STA-jay** |
| ) | |
| **LIBERTY MUTUAL INSURANCE** ) | |
| **COMPANY and WESTERN AMERICAN** ) | |
| **INSURANCE COMPANY,** ) | |
| ) | |
| **Defendants.** ) | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendants Liberty Mutual Insurance Company and Western American Insurance Company's Motion for Summary Judgment (ECF No. 48) filed June 8, 2023. Plaintiff J&S Welding, Inc. has responded in opposition, and Defendants have filed a reply. For the reasons set forth below, the Motion is **GRANTED**.

## BACKGROUND

This is an insurance coverage dispute. Plaintiff alleges that Defendants issued an insurance policy covering commercial property owned by Plaintiff and located in Humboldt, Tennessee. According to the Complaint, Plaintiff's property sustained wind and hail damage during a storm in 2020. Defendants covered Plaintiff's claim for the damage but allegedly undervalued the amount payable under Plaintiff's policy. Plaintiff alleges that Defendants are liable for breach of contract for failure to pay the full amount of damage covered by the policy. Plaintiff originally filed suit in the Circuit Court for Gibson County, Tennessee, on April 25, 2022. Defendants removed the action to this Court on June 9, 2022. On September 9, 2022, the Court entered a Rule

1

16(b) scheduling order (ECF No. 16).[1]  Based on the discovery plan proposed by the parties and approved at the scheduling conference, the Court set a jury trial for February 26, 2024.

Defendants now request judgment as a matter of law on Plaintiff's breach of contract claim. Defendants first argue that Liberty Mutual had no role in the underwriting of Plaintiff's policy and is therefore not a proper party to the action.  Defendants' primary argument is that Plaintiff has not adduced expert proof to support its claim that hail damage to the property caused a failure of the roofing system as opposed to mere cosmetic damage.  Plaintiff's policy contains a cosmetic damage exclusion.  According to Defendants, whether hail damage is cosmetic or non-cosmetic is beyond the knowledge and everyday experience of the average layperson, meaning expert testimony is the only appropriate way to prove the matter.  Defendants have offered the opinion testimony of three witnesses they intend to qualify as opinion witnesses under Federal Rule of Evidence 702.  By contrast, Plaintiff has disclosed no opinion witnesses as part of the discovery process.  The Court should therefore grant Defendants summary judgment on Plaintiff's claim.

To decide Defendants' Rule 56 Motion, the Court must consider whether any genuine issue of material fact exists that might preclude judgment as a matter of law.  A fact is material if the fact "might affect the outcome of the lawsuit under the governing substantive law."  *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the

---

[1] Defendants have filed two other requests which are still pending before the Court: a Motion for Sanctions (ECF No. 44) and a Motion to Stay Discovery (ECF No. 52).  Defendants seek sanctions for Plaintiff's failure to produce timely initial disclosures and request a stay of any additional discovery until the Court has decided the Rule 56 Motion, a request Plaintiff did not oppose.  Because the Court holds that Defendants are entitled to judgment as a matter of law on the merits of the claims, the Court finds it unnecessary to decide these other Motions.  Both Motions are therefore **DENIED** as moot.

nonmoving party." *Anderson*, 477 U.S. at 248. For purposes of summary judgment, a party asserting that a material fact is not genuinely in dispute must cite particular parts of the record and show that the evidence fails to establish a genuine dispute or that the adverse party has failed to produce admissible evidence to support a factual contention. Fed. R. Civ. P. 56(c)(1). Local Rule 56.1(a) requires a party seeking summary judgment to prepare a statement of facts "to assist the Court in ascertaining whether there are any material facts in dispute." Local R. 56.1(a). Defendants have filed a statement of undisputed facts, and Plaintiff has filed a response to Defendants' statement of facts as well as its own statement of additional facts. Based on the parties' submissions, the Court finds that the following facts are undisputed for purposes of summary judgment, unless otherwise noted.

Plaintiff owns the real property located at 2579 North 9th Avenue, Humboldt, Tennessee 38343 on which two (2) commercial shop buildings are located–a large shop building which faces east toward North 9th Avenue, and a smaller building located west of the main building (the "Property"). Defs.' Statement of Undisputed Fact ¶ 1. Plaintiff shares the large building with another business, King Tire. Pl.'s Statement of Add'l Fact ¶ 53. The roofs of the two (2) commercial shop buildings are covered by metal panels; the roof of the large shop building is the same metal roof that was installed in 1982 and 1983. Defs.' Statement of Undisputed Fact ¶ 2. On November 4, 2019, West American issued a Commercial General Liability insurance policy to Plaintiff, bearing Policy No. BKW (20) 56 41 58 45 with a policy period of November 4, 2019, through November 4, 2020, and providing certain coverages for the Property (the "Policy"). *Id.* ¶ 5. Liberty Mutual did not issue or underwrite the Policy. *Id.* ¶ 9.

Plaintiff's corporate representative, Beau Eddings, testified that a hailstorm occurred on May 4, 2020. *Id.* ¶ 21. According to Eddings, the storm occurred near the end of the workday, he

drove through the hailstorm on his way home, and no one was present at the Property during the storm. *Id.* ¶ 43. Eddings testified that the hailstorm caused significant damage throughout the town of Humboldt. Pl.'s Statement of Add'l Fact ¶¶ 54, 55. Defendants add that Eddings also testified the worst of the storm occurred over night. Defs.' Resp. to Pl.'s Statement of Add'l Fact ¶ 55. Eddings and his employees discovered water on the interior of the building the day after the storm. Pl.'s Statement of Add'l Fact ¶ 67. Plaintiff asserts that there was one leak prior to the storm, and then after the storm eleven different leaks occurred. *Id.* ¶ 56.[2] Eddings observed water intruding into the building, running down the walls in 3-foot wide spaces. *Id.* ¶ 57. Water leaking in also damaged the building's electrical panel and insulation and shorted out a bus bar. *Id.* ¶¶ 61, 62, 63.

On June 25, 2021, nearly a year after the storm of May 4, 2020, Plaintiff's public adjuster, William Griffin, filed a claim with West American related to alleged hail damage to the roofs of the main shop building and a smaller building on the Property during the summer of 2020 ("Alleged Hail Damage"). Defs.' Statement of Undisputed Fact ¶ 3. On June 29, 2021, West American received a Letter of Representation from Griffin advising that Griffin was the public adjuster for Plaintiff. *Id.* ¶ 4. West American retained Larry Ransom from Sedgwick Claims Management Services to conduct an initial inspection of the Property on July 21, 2021. *Id.* ¶ 10. Ransom provided an estimate listing an actual cash value for the covered portion of Plaintiff's claim of $49,584.95, and a total replacement cost value of $57,189.88. *Id.* ¶ 11. West American

---

[2] Plaintiff's Statement of Additional Facts actually contains two statements, each somewhat at odds with the other. In one instance, Plaintiff cites Eddings' testimony that he had worked in the building on a daily basis since December 2013 and never observed any leaks. Pl.'s Statement of Add'l Fact ¶ 56. In the very next factual assertion, Plaintiff states that Eddings had observed a single leak in the building prior to the storm. *Id.* ¶ 57. The Court notes this apparent discrepancy for the record and makes no determination of whether there was a leak in the building before the Alleged Storm Event.

issued payments to Plaintiff in the amount of $48,584.95 (after application of the $1,000 deductible), including, but not limited to, payments for repairs in accordance with the Policy. *Id.* ¶ 12. Plaintiff accepted and cashed the check issued by West American in the amount of $48,584.95. *Id.* ¶ 13.

Eddings testified that the only repairs he made to the Property with the $48,584.95 payment from West American was to apply roof sealant and repair certain electrical issues to the main building. *Id.* ¶ 37. Eddings paid Shrocks Roofing $15,200 to apply sealant on a portion of the roof of the large shop building. *Id.* ¶ 45. Plaintiff adds here that Eddings also testified about repairs to a worktable using an acid wash to remove rust from the surface of the table. Pl.'s Resp. Defs.' Statement of Fact ¶ 37. Eddings has never replaced the middle panels or insulation on the sides of either building at the Property since he purchased the Property in December 2013. Defs.' Statement of Undisputed Fact ¶ 44.

Plaintiff objected to West American's initial coverage determination and took the position that the $48,584.95 payment issued for repairs was insufficient because the damage to the Property's roofs was not merely cosmetic. *Id.* ¶ 14. In September 2021, West American retained an engineer from Donan Engineering Co., Inc., Michael Williamson, to further inspect the Alleged Hail Damage. *Id.* ¶ 15. Williamson inspected the Property on October 1, 2021, and prepared a Report of Findings dated October 6, 2021. *Id.* ¶ 16. In his Report of Findings, Williamson found that minor hail damage occurred to both buildings on the Property and most likely occurred during recorded storm events in May 2020. *Id.* ¶ 17. Williamson concluded that "the dents [on the roof covering] are due to hail strikes, but the damage is cosmetic in nature" as "the functionality of the roof[s] [have] not been affected by the hail." *Id.* ¶ 18. Williamson also determined that "hail impacts would not result in the 3[-]foot to 5-foot long lifting of the overlap seams as is present on

the main building" and that "the lifted panels are the result of deferred maintenance" and with respect to the main building, that "the leaks are due to missing screws and degraded sealant on the roof." *Id.*

On October 7, 2021, West American emailed Griffin, as Plaintiff's public adjuster, advising it was standing by its initial determination that the Alleged Hail Damage was "cosmetic in nature and has not affected the function or longevity of the roof" and that "the Roof Surfacing Cosmetic Loss Exclusion on the policy" applied. *Id.* ¶ 19. On April 25, 2022, Plaintiff filed suit against Defendants in the Circuit Court of Gibson County, Tennessee alleging breach of contract. *Id.* ¶ 20. Plaintiff specifically alleged that "[o]n or about August 21, 2020[,] . . . "[t]he Insured Premises were seriously damaged by high winds and hailstorm compromising the Plaintiff's roofing system, and siding . . ." and Defendants ". . . severely undervalued the claim." *Id.* ¶ 21. The Complaint alleged that Defendants "refuse to pay the true amount of the loss, which is a material breach of the" Policy and requested compensatory damages in an amount up to $250,000. *Id.* ¶ 23. The Complaint also alleged "William Griffin prepared an estimate as a public adjuster" regarding the Alleged Hail Damage. *Id.* ¶ 24.[3]

After Plaintiff filed suit, West American retained Brian Moon, a structural engineer at EnVista Forensics, to re-evaluate whether the Property had sustained any wind or hail-related roof damage related to the Alleged Storm Event. *Id.* ¶ 29. On August 9, 2022, counsel for Defendants

---

[3] Plaintiff has responded that this fact claim is disputed. Plaintiff's point is not clear to the Court. Defendants have merely asserted that this allegation appeared in Plaintiff's Complaint and cited the paragraph in which the allegation was made. The Complaint contains the allegation. Plaintiff does not explain the basis for the dispute over the assertion and simply cites an exhibit attached to another filing in the case. Upon inspection, the exhibit (ECF No. 40-2) appears to be an estimate prepared by William Griffin. For purposes of deciding the Motion for Summary Judgment, the Court finds that no genuine dispute exists over the fact that the Complaint alleged Griffin had prepared an estimate.

and Moon attended a site inspection of the Property. *Id.* ¶ 28.  Moon personally inspected the exterior buildings, wall siding, gutters, downspouts, and siding for hail damage.  *Id.* ¶ 31. Following his site inspection on August 9, 2022, Moon issued a written Report of Findings dated January 6, 2023.  *Id.* ¶ 30.  Moon found that "indentions in the metal components without associated surface coating damage or ruptured metal would constitute damage that would not affect the functionality or longevity of the materials."  *Id.* ¶ 32.  Moon found that his "observations indicated a presence of roughly circular indentions without surface coating damage or ruptured metal . . . ." *Id.* ¶ 33.  Moon observed a sealant that had been put on the portion of the main commercial building's roof which was owned by Plaintiff.  *Id.* ¶ 34.  During Moon's inspection, he was able to observe the unsealed portion of the roof directly adjacent to the sealed portion.  *Id.* ¶ 35.  Moon determined the minor hail damage observed at the Property did "not affect the functionality or longevity of the roof covering and wall siding."  *Id.* ¶ 36.  While Plaintiff contests Moon's conclusions, Plaintiff does not actually dispute that Moon reached these conclusions in his written report.

West American also retained Tim Kelley from West Tennessee Restoration to conduct a site inspection on August 9, 2022, and evaluate the Property for estimated costs of repairs associated with the Alleged Hail Damage.  *Id.* ¶ 38.  Kelley determined that any hail damage to the roof was "so minor in nature that it does not appear in photos nor would it effect the functionality of the roof."  *Id.* ¶ 39.  Kelley prepared an estimate regarding the total replacement cost value estimate of $55,311.71, which is approximately $1,878.17 less than the initial replacement cost value estimate prepared by Liberty's representatives prior to the lawsuit being filed in the amount of $57,189.88. *Id.* ¶ 40. West American takes the position that any roof damage

observed at the Property related to the Alleged Storm Event constitutes "cosmetic loss or damage" and is specifically excluded by the Policy. *Id.* ¶ 41.

Eddings testified that he has "never walked on the roof" and in response to Defendants' counsel's questions about what knowledge Plaintiff had about the cost to repair the Alleged Hail Damage, Eddings testified "I'm not a contractor or a roofer, I really don't know." *Id.* ¶ 46. Eddings went on to say, "I'm not a roofer. Like I said, I'm not a contractor. I don't build buildings" and "I do not know if that's what it would take or not, I really don't. It's a big building, industrial steel. There's a lot of to go by, you know, rules to get it done. I can't say that that number will cover it or it won't cover it." *Id.* ¶ 47. Other than William Griffin, no one else has given Plaintiff estimates for what it would cost to replace the roof. *Id.* ¶ 48.

When asked what support he had to substantiate his claim about Defendants severely undervaluing the claim, Eddings testified "I didn't set the process that are on these quotes; you know what I mean? So, how do I know if it's undervalued or overvalued?" *Id.* Eddings testified that he agreed to pay Griffin ten percent (10%) of any recovery obtained from this lawsuit and that he has already paid Griffin 10% for his services as Plaintiff's public adjuster out of the $48,584.95 payment West American issued to Plaintiff. *Id.* ¶ 49. The scheduling order gave Plaintiff until May 8, 2023, to provide its expert witness disclosures. *Id.* ¶ 26. As of the filing of the Motion, Plaintiff had not disclosed any expert witnesses and has not provided any reports from an expert witness. *Id.* ¶ 27.

Plaintiff owns all of the equipment inside the building and claims that the water intrusion damaged tools and equipment, including tooling, milling machines, a lathe, drill bits, and inventory. Pl.'s Statement of Add'l Facts ¶¶ 64, 65, 66, 68. During discovery, Plaintiff produced a document entitled "Tool List 1" and "Tool List 2", which listed tools and equipment that Plaintiff

claimed were damaged as a result of the Alleged Storm Event and included a total repair amount of $35,200.00. Defs.' Statement of Undisputed Fact ¶ 51. Plaintiff has claimed the loss of tools within the large commercial building but without identifying an expert to opine that the claimed tool damage was caused by the Alleged Storm Event. *Id.* ¶ 52.

### STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment if the party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has stated that "[t]hough determining whether there is a genuine issue of material fact at summary judgment is a question of law, it is a legal question that sits near the law-fact divide." *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009). In reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A court does not engage in "jury functions" like "credibility determinations and weighing the evidence." *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 515 (6th Cir. 2019) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)). Rather, the question for the Court is whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson*, 477 U.S. at 252. In other words, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

As in any case where the Court exercises jurisdiction under section 1332 based on the parties' diversity of citizenship and the amount in controversy, the Court applies the law of the forum state, including the forum's choice-of-law rules.  *Loreto v. Procter & Gamble Co.*, 515 F. App'x 576, 578 (6th Cir. 2013) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). The parties have briefed the substantive law of the state of Tennessee in their motion papers.  The Court will assume for purposes of deciding the questions of law presented in the Motion for Summary Judgment that Tennessee law governs the parties' dispute.

As part of its application of Tennessee law, the Court must follow "a ruling from the state supreme court." *Smith v. Gen. Motors, LLC*, 988 F.3d 873, 878 (6th Cir. 2021) (citing *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 937 (6th Cir. 2014)). Without a clear ruling from the Tennessee Supreme Court, the *Erie* doctrine requires this Court to "predict[] how the state supreme court would rule by looking to all available data, including decisions of the states' appellate courts." *Smith*, 988 F.3d at 878 (internal citation omitted); *see also Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 358 (6th Cir. 2018) (citing Tenn. Sup. Ct. R. 4(G)(2) for the proposition that a published opinion of the Tennessee Court of Appeals is "controlling authority for all purposes unless and until such opinion is reversed or modified by a court of competent jurisdiction").

## ANALYSIS

### I. Liberty Mutual Insurance Company

The issue presented is whether Defendants are entitled to judgment as a matter of law on Plaintiff's breach of contract claim. As a preliminary matter, Defendants argue and Plaintiff concedes that Liberty Mutual Insurance Company is not a proper party to this case because West

American issued Plaintiff's policy and conducted all underwriting on the policy. Based on these undisputed facts, the Court holds that Liberty Mutual is entitled to judgment as a matter of law on any claim Plaintiff has brought against it for breach of Plaintiff's insurance policy. Therefore, Defendants' Motion for Summary Judgment is **GRANTED** as to Liberty Mutual.

### II. Plaintiff's Late Filing

West American next contests the timeliness of Plaintiff's written response brief and argues that the Court should disregard it. Local Rule 56.1 governs motion practice for summary judgment motions and gives a non-moving party 28 days to respond. Local R. 56.1(b) (giving a non-moving party 28 days from the date the moving party serves its motion in which to respond). Defendants filed their Motion for Summary Judgment on June 8, 2023, making Plaintiff's brief due no later than July 6, 2023. The Court granted Plaintiff two different extensions of time to file its response, the first on June 27, 2023, and the second July 18, 2023. When the Court granted Plaintiff's second request to extend the response deadline, the Court set July 24, 2023, as the deadline for Plaintiff to file its response.

Plaintiff missed its deadline to file the brief, albeit by only a few hours. According to CM-ECF, Plaintiff filed the brief at 8:35 a.m. on July 25, 2023. Plaintiff did not request what would have been a third extension of its deadline for responding to Defendants' Rule 56 Motion and has not shown why it did not meet the July 24, 2023, deadline. Even so, the Court will not disregard Plaintiff's late-filed brief. In the special context of summary judgment and Rule 56, it is not clear what effect disregarding Plaintiff's late brief would have. "[S]ummary judgment cannot be granted by default even if there is a complete failure to respond to the motion." Fed. R. Civ. P. 56, Advisory Committee Note (2010). This means "[e]ven where a party offers no timely response to a motion for summary judgment, the District Court may not use that as a reason for granting

summary judgment without first examining all the materials properly before it under Rule 56(c)." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014) (quoting *Smith v. Hudson,* 600 F.2d 60, 65 (6th Cir. 1979) (cleaned up)).  In other words, even if the Court disregarded Plaintiff's paper, the Court would still need to evaluate West American's request on the merits.

The failure to make a timely response to a motion for summary judgment is not consequence-free, however.  "If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(1) & (2); *see also* Local R. 56.1(d) (stating that a failure to respond to the other party's statement of facts "shall indicate that the asserted facts are not disputed for purposes of summary judgment").  Consistent with Rule 56(e) and Local Rule 56.1(d), the Court could deem the facts asserted by West American undisputed for purposes of deciding the Motion for Summary Judgment.

Under the specific circumstances presented here, the Court will exercise its discretion and consider Plaintiff's late-filed brief.  Plaintiff filed the brief early on the business day after the passing of the deadline.  Although Plaintiff's late filing could be grounds to deem West American's version of the facts undisputed under Rule 56(e), disregarding Plaintiff's submissions would serve no meaningful purpose.  Plaintiff did not actually dispute most of West American's factual assertions for purposes of the Court's summary judgment analysis.  Because the parties have now fully briefed the issues and most of the material facts of the case are undisputed anyway, the Court will consider Plaintiff's late-filed brief and decide Defendants' Motion for Summary Judgment on the merits of both parties' arguments.

The Federal Rules of Civil Procedure and Local Rules of Court and the deadlines each contains play an essential role in "the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. As an officer of the Court, counsel for Plaintiff is aware of his duty to meet the deadlines set by the Court or else make an appropriate request for extension <u>before</u> the expiration of the deadline. Counsel for Plaintiff is cautioned that his failure to act within the time required in future cases may result in the Court disregarding filings submitted by counsel or deeming as waived any arguments counsel failed to raise on behalf of his client before the running of the response deadline. Counsel is also cautioned that missing deadlines may be grounds for sanctions.

### III. Plaintiff's Lack of Opinion Evidence

Turning now to the merits of the arguments, the question becomes can Plaintiff discharge its burden to prove a breach of its insurance policy without competent opinion testimony to prove the breach? To reach that question, the Court first must decide what the policy's exclusion for cosmetic loss or damage means and then what Plaintiff must show to prove that the damage to its roof does not fall within the exclusion. The Tennessee Supreme Court has held that "[i]nsurance policies are, at their core, contracts," and "questions regarding the extent of insurance coverage present issues of law involving the interpretation of contractual language" contained in the policies. *Garrison v. Bickford*, 377 S.W.3d 659, 663–64 (Tenn. 2012) (citation omitted). In Tennessee, the essential elements of a breach of contract claim are as follows: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Life Care Ctrs. of Am., Inc. v. Charles Town Assocs., Ltd.*, 79 F.3d 496, 514 (6th Cir. 1996); *C & W Asset Acquisition, LLC v. Oggs,* 230 S.W.3d

671, 676–77 (Tenn. Ct. App. 2007) (quoting *ARC LifeMed, Inc. v. AMC–Tenn., Inc.,* 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)).

The dispute at the heart of this case involves a policy exclusion. As Defendants acknowledge, general contract law places the burden on an insurer to prove that a policy exclusion applies to exclude the insured's loss from coverage. *Zitzow v. Auto-Owners Ins. Co.*, No. 22-5549, 2023 WL 2033792, at *4 (6th Cir. Feb. 16, 2023) (applying Tennessee law and citing *Se. Med. Health Ctr., Inc. v. Pac. Ins. Co., Ltd.*, 439 F. Supp. 2d 831, 835 (W.D. Tenn. 2006)) (internal citations omitted). "Once an insurer has established that an exclusion applies, the burden shifts to the insured to demonstrate that its claim fits within an exception to the exclusion." *Standard Fire Ins. Co. v. Chester O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 8 (Tenn. Ct. App. 1998). West American concedes for purposes of summary judgment that "the Alleged Storm Event occurred during the Policy's effective period and that hail damage to the roofs has been observed that may be related to the Alleged Storm Event." Defs.' Mem. in Support 12 (ECF No. 48-12). West American nevertheless argues that a policy exclusion for cosmetic losses applies in this case.

Plaintiff's insurance policy contained the following language below the section heading "ROOF SURFACING COSMETIC LOSS EXCLUSION":

> We will not pay for "cosmetic loss or damage" to any "roof surface" caused by wind and/or hail. For the purpose of this endorsement, "cosmetic loss or damage" means marring, pitting or other superficial damage caused by wind/and or hail that alters the physical appearance, but does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the "cosmetic loss or damage" occurred. "Roof surface" refers to the shingles, tiles, flashing, cladding, metal or synthetic sheeting or any other materials used for the roof, including all materials applied to or under the roof for protection or insulation from moisture or the elements.

Certified Copy of Policy PageID 193 (ECF No. 8-1).  The Court finds this language from the policy to be clear and unambiguous.[4]  If the contract language is unambiguous, then the parties' intent is determined from the four corners of the contract."  *Ray Bell Const. Co., Inc. v. State, Tenn. Dept. of Transp.*, 356 S.W.3d 384, 387 (Tenn. 2011) (citing *Whitehaven Cmty. Baptist Church v. Holloway,* 973 S.W.2d 592, 596 (Tenn. 1998)).

The policy excluded from coverage any "cosmetic loss or damage" and defined "cosmetic loss or damage" to mean "marring, pitting or other superficial damage caused by wind/and or hail that alters the physical appearance, but does not prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the 'cosmetic loss or damage' occurred."  The Court construes this provision of the contract to exclude from coverage any loss or damage (1) consisting of marring, pitting, or other superficial damage, (2) caused by wind and/or hail, (3) that alters the physical appearance of the roof, (4) but without preventing the roof from continuing to function as a barrier to entrance of the elements to the extent it did before the loss or damage occurred.

The Court finds that West American has met its burden to show that the cosmetic loss or damage exclusion applies and that each of these elements of the exclusion is met in this case. There is proof in the record, and West American tacitly concedes as much, that Plaintiff's roof suffered damage, hail caused the damage to Plaintiff's roof, and the damage altered the physical appearance of the roof.  Of these elements defining the "cosmetic loss and damage" exclusion, only the fourth and final element is in dispute at this stage of the case.  West American has

---

[4] Plaintiff argues in somewhat cursory fashion that the exclusion is ambiguous because a leak constitutes proof the roof is no longer functioning.  But Plaintiff's argument does not show why the language of the policy is "of uncertain meaning and may fairly be understood in more ways than one."  *Farmers-Peoples Bank v. Clemmer,* 519 S.W.2d 801, 805 (Tenn. 1975).

introduced opinion testimony from several witnesses to show that any damage to Plaintiff's roof would not prevent the roof from continuing to function as a barrier to the entrance of the elements to the extent it did before the loss or damage occurred.[5]   West American disclosed Michael Williamson of Donan Engineering Co. as an opinion witness.  Williamson inspected the property and concluded that "the dents [on the roof coverings] are due to hail strikes, but the damage is cosmetic in nature" as "the functionality of the roof[s] [have] not been affected by the hail."  Defs.' Statement of Undisputed Fact  ¶ 18.  Williamson noted in his report 3-foot and 5-foot sections of lifted metal at the seams where two panels met as well as missing screws and "degraded sealant" on the roof.  Williamson opined that hail damage would not have caused any of these conditions and that the leaks observed at the property were caused by the missing screws and inadequate sealant.  Williamson Rep. 5 (ECF No. 48-6).

West American also disclosed a structural engineer, Brian Moon of EnVista Forensics. Moon opined that "indentions in the metal components without associated surface coating damage or ruptured metal would constitute damage that would not affect the functionality or longevity of the materials."  *Id.*  ¶ 32.   Lastly, West American disclosed Tim Kelley of West Tennessee

---

[5] West American's evidentiary submissions include proof about Larry Ransom of Sedgwick Claims Management Services, the person hired to conduct an initial inspection of the Property on July 21, 2021.  Defs.' Statement of Undisputed Fact ¶ 10.  According to the declaration of Teresa Herman, a Catastrophe Analyst employed with West American's parent company Liberty Mutual, Ransom determined that the "roof damage was cosmetic in nature and did not affect the functionality of the roof."  Herman Decl. ¶ 11 (ECF No. 48-1).  While this statement does appear in Herman's declaration, Ransom's report is more like an itemized estimate of the costs of repairs. Attached as an exhibit to Herman's declaration is a copy of Ransom's estimate of the total costs of repairs.  Ransom did not include any specific findings about the cosmetic nature of the damage to Plaintiff's roof in the estimate.  The Court would also point out that West American did not disclose Ransom as an expert witness in this case.  *See* Defs.' Expert Disclosures (ECF No. 48-11).  The Court notes this proof for the record.  However, the Court finds it unnecessary to include Ransom's estimate in its evaluation of the expert opinion testimony on which West American intends to rely at trial.

Restoration as an opinion witness.  According to Kelley's report, the hail damage observed on the roof was "so minor in nature that it does not appear in photos nor would it effect the functionality of the roof."  *Id.* ¶ 39.

A reasonable juror could find from this evidence that the cosmetic loss or damage exclusion applies to preclude Plaintiff's breach of contract claim.  All of West American's opinion witnesses will testify that the damage did not impair the proper functioning of the metal roof and therefore constitutes only "cosmetic loss or damage."  Williamson will opine that the leaks observed at the Property resulted from missing screws and failing sealant on the roof.  Because West American has met its burden on the applicability of the exclusion, Plaintiff's breach of contract claim will only survive if Plaintiff can adduce evidence to show why the cosmetic loss exclusion does not apply.  Specifically, Plaintiff must cite proof to show that the damage to the roof "prevent[s] the roof from continuing to function as a barrier to entrance of the elements to the extent it did before the loss or damage occurred," meaning the damage observed at the Property is more than "cosmetic" and does not fall under the policy exclusion's definition of "cosmetic loss or damage."

The Court holds that Plaintiff has not met that burden.  Plaintiff has not disclosed any expert in the field of metal roofing systems to rebut the expert proof offered by Defendants on the cosmetic nature of the damages to Plaintiff's property.  Testimony about the functionality of a metal roof damaged by hail strikes clearly qualifies as a matter of "scientific, technical, or other specialized knowledge."  Fed. R. Evid. 702.  The design and integrity of metal roofing installed on a commercial building are matters outside "the common knowledge of laymen."  *Whaley v. Rheem Mfg. Co.*, 900 S.W.2d 296, 301 (Tenn. Ct. App. 1995).  Plaintiff-insureds bringing similar claims arising out of hail damage to metal roofing and contesting their Defendant-insurer's proof that the damage was only cosmetic commonly rely on opinion testimony to prove that the hail

damage affected the proper functioning of the roof.  *E.g. Valleyview Church of Nazarene v. Church Mut. Ins. Co.*, 2:20-CV-222-Z-BR, 2023 WL 4504595, at *2 (N.D. Tex. June 13, 2023) (holding that opinion testimony "that the hail penetrated the outer layer of the roof's protective barrier which allowed water and other contaminants — like salt, silt, and soil — to infiltrate the outer layer of the roof" was admissible); *Irving v. Meridian Security Ins. Co.*, --- F. Supp.3d ---, No. 4:21-cv-01341-O, 2022 WL 17903801, at *2 (N.D. Tex. Dec. 23, 2022); *Arthur v. Liberty Mut. Personal Ins. Co.*, SA-21-CV-00602-FB, 2022 WL 17824520, at *5 (W.D. Tex. Dec. 20, 2022); *Mountain Food, LLC v. Sentry Ins.*, 636 F.Supp.3d 1307, 1311 (D. Colo. 2022) (holding that the question of "whether the damage is cosmetic (excluded) or functional (covered)" was "an issue of fact, requiring expert testimony at trial").

This means Plaintiff cannot call a lay witness to offer specialized opinion testimony on the functionality of his building's metal roofing system, even if the same witness offers both fact and opinion testimony.  Fed. R. Evid. 701, Advisory Committee Notes to 2000 Amendments ("[A]ny part of a witness' testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702 and the corresponding disclosure requirements of the Civil and Criminal Rules.").  Plaintiff has not disclosed any qualified opinion evidence about the nature of the damage to the roof and specifically whether hail damage compromised the roof's functionality.  And Plaintiff has not cited a case of this kind where an insured did not offer opinion evidence to carry its burden of proof on a cosmetic loss exclusion.  Therefore, the Court concludes Plaintiff has failed to create a genuine dispute over whether the policy's "cosmetic loss or damage" exclusion bars coverage for the damage to Plaintiff's property.

Plaintiff argues that testimony of Beau Eddings, the principal of J&S Welding and the owner of the Property, is admissible evidence of causation under Federal Rule of Evidence 701.

18

Rule 701 permits a lay witness to offer opinion testimony but only opinions: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. "[T]he distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." Fed. R. Evid. 701, Advisory Committee Notes to 2000 Amendments (quoting *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992) ("[A] lay witness with experience could testify that a substance appeared to be blood, but that a witness would have to qualify as an expert before he could testify that bruising around the eyes is indicative of skull trauma.").

The Court holds that Eddings' testimony does not meet the Rule 701 test. According to Eddings, the building had more leaks after the Alleged Storm Event than before. Eddings testified about the amount of water from the leaks he observed in the building and the damage to the premises and the tools stored on site. It is also true that Eddings testified that the leaks stopped after he paid a contractor to apply a coating to reseal the roof. Eddings Dep. 38:1-9 (ECF No. 55-3). Eddings may clearly testify as to what he saw in terms of the leaks at the Property or the steps he took to try to repair them. The problem is none of the testimony cited by Plaintiff actually establishes causation.[6] In fact, Plaintiff has not cited any testimony where Eddings rendered an opinion about the cause of the leaks at all. Eddings merely testified that the building had almost

---

[6] The Court notes that some policies containing an exclusion for cosmetic loss or damage also contain an exception to the exclusion where there is proof a metal roof leaked after a hail storm. *Horton v. Allstate Vehicle & Prop. Ins. Co.*, No. 4:20-CV-3109, 2022 WL 7265953 (S.D. Tex. Sept. 12, 2022) (citing a policy's exception to the cosmetic damage exclusion, reading "We will not apply this exclusion to sudden and accidental direct physical damage to the surface of a metal roof caused by hail that results in water leaking through the surface of a metal roof."). Plaintiff's policy contained no such exception.

no history of water leaks before the 2020 storms and then had a number of significant leaks following the storms.  This is not Rule 701 lay opinion, just straight factual testimony.

Moreover, nothing about this testimony connects the leaks Eddings observed to hail damage from the 2020 storms.  Even if Eddings had rendered an opinion about the cause of the leaks, he lacks the training or experience to address the functionality of the roof.  As Eddings himself admitted in his deposition, Eddings has no technical knowledge of roofing materials or installation to offer any qualified testimony on whether the damage to his property was cosmetic or not.  Eddings conceded in his deposition that he had never walked on the roof and had no background knowledge about the roof's condition.  Defs.' Statement of Undisputed Fact  ¶¶ 46, 47.  Viewing the testimony in a light most favorable to Plaintiff, Eddings could only say that he observed leaks after one of the hailstorm events of 2020 but could not rebut the testimony of West American's experts that the hail did not impair the proper functioning of the roof.  The Court concludes that any lay testimony Eddings could offer about the functionality of his roof would be inadmissible.

Plaintiff also argues that the testimony of Plaintiff's public adjuster William Griffin would be admissible under Rule 701 to explain the amount of damages and perhaps why the damage compromised the metal roof's proper functioning.  In point of fact, Plaintiff actually cites Griffin's estimate just as proof of damages, not causation.  Pl.'s Resp. in Opp'n 4 (ECF No. 55-1) ("The public adjuster estimates are admissible as 701 testimony with regard to the amount of roof damages . . . . .").  Plaintiff argues that a recent Sixth Circuit decision held that the testimony of a public adjuster is admissible lay testimony under Rule 701.  Plaintiff has not actually cited anything from the opinion to support his characterization of it, and the Court finds the case states no such holding.

In *Zitzow v. Auto-Owners Ins. Co.*, No. 22-5549, 2023 WL 2033792, at *4 (6th Cir. Feb. 16, 2023), the Court of Appeals considered whether a district court had erred by admitting the testimony of a public adjuster under Rule 701.  Notably, the district court admitted the adjuster's estimate over the insurance company's objection at trial on the issue of damages, not causation, where the adjuster had used "Xactimate (an insurance claims-estimating software)" to produce an estimate of the amount of the insured's damages.  *Zitzow*, 2023 WL 2033792, at *8.[7]  Rather than announcing a bright line rule about the admissibility of a public adjuster's testimony under Rule 701, the Court of Appeals never reached the question of whether the adjuster's estimate was a matter of opinion evidence subject to the disclosure requirements for opinion testimony.  The panel decided that the insured's failure to disclose the adjuster as an opinion witness was harmless in light of the other proof at trial establishing the insured's damages.  *Id.* at *9 ("But we need not resolve whether the district court properly concluded that Grandchamp was a lay witness, for even if he should have been considered an expert, any failure to properly disclose him was harmless. *See* Fed. R. Civ. P. 37(c)(1).").  *Zitzow* simply does not stand for the proposition for which Plaintiff has cited it.

For reasons the Court has already explained, the nature of the damage to Plaintiff's roof is outside the realm of everyday experience and therefore must be the subject of qualified opinion evidence.  Plaintiff never disclosed Griffin or any other witness as an expert.  *See* Fed. R. Civ. P. 26(a)(2) (requiring a party to "disclose the identity of any witness it may use at trial to present

---

[7] One of the issues for trial in *Zitzow* was whether "hydrostatic pressure" had caused the collapse of a retaining wall at the insured's home.  The insureds presented their own expert proof that "the retaining wall collapsed due to "the force of storm winds and ground vibrations." *Zitzow*, 2023 WL 2033792, at *1.  The Sixth Circuit's written opinion is clear that the insured's public adjuster offered proof to establish the extent of the insured's damages, not the cause of the damages.

evidence under Federal Rule of Evidence 702"); Fed. R. Civ. P. 37(c)(1) (prohibiting a party from calling on a witness it failed to disclose as required under Rule 26(a) "unless the failure was substantially justified or is harmless").  Even if Plaintiff had made the proper disclosure,  Plaintiff has not even cited any testimony from Griffin to rebut West American's showing on the cosmetic nature of the damage.  Plaintiff has made Griffin's estimate (ECF No. 40-2) of the total replacement cost of the roofing system part of the record.  However, Griffin's estimate contains no description of Griffin's opinion regarding the damage to the roof or any explanation of the basis for his apparent conclusion that the entire roof needed to be replaced.  Other than the estimated costs listed by Griffin, nothing in the exhibit contests the proof offered by West American that the damage to the roof was cosmetic in nature and did not impair the functionality of the metal roofing materials.  Plaintiff's reliance on this single document fails to show why a genuine dispute exists over the policy's "cosmetic loss or damage" exclusion.

Finally, Plaintiff cited the testimony of Griffin and Beau Eddings to establish damages. Putting aside the fact that Plaintiff has not carried its burden to prove causation with admissible opinion evidence, Eddings' testimony is not admissible to prove the reasonable costs of a repair. "While a plaintiff can testify as to the value of an item of personal property, expert testimony is required to prove whether or not property can be repaired, and if so, the costs of such repairs." *Speakman v. Liberty Ins. Corp.*, No. 4:16-cv-41, 2017 WL 3671364, at *4 (E.D. Tenn. July 5, 2017). While Eddings could testify to what a repair cost him, the Court finds that any lay testimony Eddings could offer about the reasonable cost to repair damaged tools would be inadmissible.

In sum, the Court is left with the opinion testimony introduced by West American to show that Plaintiff's roof suffered only cosmetic damage, therefore excluding the damage from coverage under the terms of Plaintiff's policy.  Plaintiff has failed to disclose any opinion testimony to create

a genuine dispute of fact over whether the roof's damage was merely cosmetic or actually impacted the proper functioning of the roof.  Because West American has carried its burden of proof on the policy exclusion and Plaintiff has not introduced any evidence from which a reasonable jury could reject West American's opinion evidence, West American is entitled to judgment as a matter of law on Plaintiff's breach of contract claim.

## **CONCLUSION**

Liberty Mutual is entitled to judgment as a matter of law because the undisputed proof shows Liberty Mutual did not issue Plaintiff's policy or conduct the underwriting.  West American is entitled to judgment as a matter of law because West American has carried its burden to prove that a policy exclusion applies, and Plaintiff has failed to adduce admissible opinion evidence to contest West American's proof of the functionality of the roof on Plaintiff's Property.  Therefore, the Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED**.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: September 20, 2023.